UNION PAC. R. CO. v. BOARD OF COM'RS OF WELD COUNTY, COLO.,
et al.

(Circuit Court of Appeals, Eighth Circuit.   February 12, 1915.)

No. 4136.

COURTS ⬤═335—EQUITY JURISDICTION OF FEDERAL COURTS—EFFECT OF STATE
LEGISLATION.

While state legislation on the subject of procedure cannot impair the
remedial powers of federal courts of equity, the Legislature of a state
may, within constitutional limitations, change the substantive law, even
though such change of necessity produces changes in remedial relief;
and where a statute gives a new right that may be enforced by an ac-
tion at law, equally available in a federal or state court, in cases where
the federal court has jurisdiction, such remedy may supersede and dis-
place an equitable remedy theretofore existing in the federal courts,
since the statute may remove the very evil which was the ground of
equitable jurisdiction, or by providing an adequate remedy at law exclude
such jurisdiction, under Judicial Code (Act March 3, 1911, c. 231) § 267, 36
Stat. 1163 (Comp. St. 1913, § 1244).

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 902–907½; Dec.
Dig. ⬤═335.]

Appeal from the District Court of the United States for the District
of Colorado: Robert E. Lewis, Judge.

On motion for rehearing.   Denied.

For former opinion, see 217 Fed. 540.

C. C. Dorsey, of Denver, Colo. (N. H. Loomis, of Omaha, Neb., and
Gerald Hughes and E. I. Thayer, both of Denver, Colo., on the brief),
for appellant.

Charles F. Tew, of Greeley, Colo. (Walter E. Bliss, of Greeley, Colo.,
on the brief), for appellees.

Before HOOK and SMITH, Circuit Judges, and AMIDON, Dis-
trict Judge.

AMIDON, District Judge.   In a carefully prepared petition for re-
hearing the following passage from the opinion filed herein is quoted:

"Is the remedy given by section 5750 adequate?   It is difficult to follow the
reasoning which would hold that it is not adequate.   The evil caused by suits
in equity to restrain the collection of taxes is grave, and has often been set
forth by courts.   Dows v. Chicago, 11 Wall. 108, 112, 20 L. Ed. 65; State Rail-
road Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Indiana Manufacturing Co. v.
Koehne, 188 U. S. 681, 23 Sup. Ct. 452, 47 L. Ed. 651; Boise Artesian Water
Co. v. Boise City, 213 U. S. 276, 29 Sup. Ct. 426, 53 L. Ed. 796.   To correct this
evil, statutes of similar import to section 5750 have been passed in many of
the states of the Union.   The highest court of Colorado has frequently declared
the correction of this evil to have been the object of its statute.   Board of
Commissioners of Bent County v. Atchison, T. & S. F. Ry. Co., 52 Colo. 609,
125 Pac. 528.   The statute is not attacked upon the ground that it is uncon-
stitutional, nor could such an attack, if made, be sustained.   The law is there-
fore valid legislation.   It was not intended to be cumulative.   Its object was
to give an action at law for the recovery of sums paid on account of invalid
taxes, in place of a suit in equity to restrain their collection.   Under such
circumstances, does it lie with the courts to say that the remedy which the
Legislature has provided is inadequate, and that the remedy which it has

condemned shall therefore be continued? This would be to make the law of no effect through the traditions of equity. It would not only be judicial legislation, but would nullify a statute which is conceded to be constitutional. It is a mistake to view this statute as relating to procedure only. It creates a right in favor of the aggrieved taxpayer, and, from considerations of the highest public policy, abolishes the right to stay the collection of public revenues by injunction. The courts may not rightfully nullify it, upon the ground that the remedy which it gives is less adequte than the one which it takes away. The statute being constitutional, the judgment of the Legislature on that subject must control. Such statutes have been frequently before the Supreme Court, and have been uniformly held to afford a plain, speedy, and adequate remedy such as excludes the right to resort to equity."

In regard to this passage the petition proceeds as follows:

"We respectfully assert that this is revolutionary doctrine. From the foundation of the federal judicial system until this court spoke in the present case, it had been held by an unruffled current of authority, including repeated decisions of the Supreme Court of the United States, that equity jurisdiction of the federal courts was to be determined in accordance with the general principles of equity as the same existed in 1789, at the time of the adoption of the first Judiciary Act," etc.

This is a grave charge, especially grave when made by the eminent counsel who sign the petition. It has therefore received careful consideration.

The rule which the passage of our opinion is supposed to violate is stated as follows in Payne v. Hook, 7 Wall. 425, 430, 19 L. Ed. 260:

"We have repeatedly held 'that the jurisdiction of the courts of the United States over controversies between citizens of different states could not be impaired by the laws of states, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power.' If legal remedies are sometimes modified to suit the changes in the laws of states, and the practice of their courts, it is not so with equitable. The equity jurisdiction conferred on the federal courts is the same that the High Court of Chancery in England possesses, is subject to neither limitation nor restraint by state legislation, and is uniform throughout the different states of the Union."

The case in which this language was used was as follows: An administrator in the state of Missouri had wasted the estate and converted the same to his own use, and been guilty of other gross frauds. An heir of the estate residing in Virginia filed a bill against the administrator, asking that he be compelled to account, that certain fraudulent instruments be set aside, and plaintiff's distributive share be ascertained, and a decree entered for its payment. The statute of Missouri conferred exclusive jurisdiction in the administration of estates of deceased persons upon the probate courts of the state. The administrator objected to the suit in the federal court upon the ground that this remedy in the probate court was plain and adequate, and exclusive of all redress by plenary suit in equity. Under the laws of Missouri a citizen of that state, seeking redress similar to that sought by the plaintiff, would have been compelled to go into the probate court, and it was contended that a citizen of Virginia could have no other remedy. The Supreme Court rules that this remedy in the courts of the state could not be pursued in the federal courts, and could not be given effect so as to destroy the jurisdiction of those courts as created by the Constitution and laws of the national government.

Another case cited in the petition for rehearing is Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819. That was a suit brought by railroad companies having lines in the state of Nebraska to restrain the enforcement of a schedule of rates fixed by the Railway Commission of that state. The local statute authorized any railroad company to show, in a proper action brought in the Supreme Court of the state, that the rates prescribed by the Commission were unreasonable and unjust, and, if that court found such to be the fact, to obtain an order upon the Railway Commission permitting the rates to be raised, etc. It was objected to the jurisdiction of the federal court that this remedy was plain and exclusive. The Supreme Court ruled that the remedy could not be pursued in the federal courts, and that, as the case made by the bill showed a controversy clearly within the jurisdiction of those courts, the granting of this statutory remedy, which was available in the state court alone, could not have the effect to destroy jurisdiction of the federal courts.

A great many cases of similar character are cited and quoted from in the petition for rehearing. Among them are the following: McConihay v. Wright, 121 U. S. 201, 205, 7 Sup. Ct. 940, 30 L. Ed. 932; Mississippi Mills v. Cohn, 150 U. S. 202, 14 Sup. Ct. 75, 37 L. Ed. 1052; Borer v. Chapman, 119 U. S. 587, 600, 7 Sup. Ct. 342, 30 L. Ed. 532; Kirby v. Lake Shore & Michigan Southern R. R., 120 U. S. 130, 137, 7 Sup. Ct. 430, 30 L. Ed. 569; Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 84 C. C. A. 167; Spencer v. Watkins, 169 Fed. 379, 94 C. C. A. 659; McClellan v. Carland, 187 Fed. 915, 110 C. C. A. 49; National Surety Co. v. State Bank, 120 Fed. 593, 56 C. C. A. 657, 61 L. R. A. 394. In all of these cases the remedy given by the state statute was confined to state courts or could not be asserted by a citizen of another state in the federal courts.

What bearing have these authorities on the present case? In the absence of a statute, the payment of a tax, with few exceptions, is held to be voluntary, and, though the tax may be invalid, the money paid cannot be recovered. This is especially true of taxes upon real property. The process by which such taxes are collected is so gradual, and affords so many opportunities of resistance, that the courts have almost uniformly held that there can be no such duress as to such taxes as to render their payment involuntary. The statute of Colorado here under consideration changes that law. It provides that, in all cases in which a person shall pay a tax which is for any reason erroneous or illegal, the board of county commissioners shall refund the same without abatement or discount. This is substantive law. It gives a new right. The statute has nothing to do directly with the law of procedure. The remedy for the enforcement of the right which it gives is not prescribed by the statute. That remedy is a suit at law. It is given by the common law. That is the remedy now, was the remedy in 1789, and for some centuries before that date. This remedy, as Mr. Justice Van Devanter points out in Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 Sup. Ct. 942, 57 L. Ed. 1288, is available in the federal courts the same as in the state courts.

In the passage quoted from our opinion we thought we made it plain that this statute does not provide a remedy in the sense that that term

is used in the law of procedure. It deals only with the substantive rights of property owners. It is remedial only in the sense of a substantive law which corrects a known evil. It is too elementary for discussion that such laws of the several states are as binding upon federal courts, sitting in those states, as upon the local courts. We are therefore brought back to the conclusion reached in that part of our opinion which is criticized, namely, that the statute lies in a field of legislative, rather than judicial, discretion.

The inapplicability of the decisions cited in the petition for rehearing is made quite plain by the opinion of this court in National Surety Company v. State Bank, 120 Fed. 593, 602, 56 C. C. A. 657, 61 L. R. A. 394. It is there said as follows:

"It is an absence of an adequate remedy at law *in the national courts, and that alone*, which conditions jurisdiction in equity in those courts."

States cannot, by conferring jurisdiction upon their own courts alone, oust the jurisdiction of federal courts. Nor can they, by creating a remedy which, in the system of practice that obtains in the federal courts, cannot be pursued there, destroy the jurisdiction of those courts. But, as we have pointed out, there are in the present case no such difficulties. The statute of Colorado simply grants to a property owner the right to have any sum exacted from him by an illegal tax refunded. The remedy for the enforcement of such a right is now, and has always been, an action at law. When facts which confer federal jurisdiction exist, the right can be enforced in the federal courts by precisely the same remedy as in the state courts.

It is well established, as counsel for appellant contend, that state legislation on the subject of procedure cannot impair the remedial powers of federal courts of equity. Over against this, however, stands the equally well established principle that the Legislature of the state may, within constitutional limits, change the substantive law. Such changes will, of necessity, frequently produce changes in remedial relief. A system of practice which took no account of changes in the substantial rights of litigants would be anomalous indeed. Whole departments of equitable jurisdiction have been swept away by changes in the substantive law. The rights of married women and of assignees of choses in action are familiar illustrations. In 1789, and for some decades thereafter, equity had exclusive jurisdiction of such rights. Changes in substantive law have so completely obliterated that jurisdiction that a reference to it is beginning to seem antiquarian. A statute which gives a new right, that may be enforced by an action at law, may remove the very evil which was the ground of equitable jurisdiction. When such a statute is passed, it must be taken in connection with section 723, Rev. St. U. S., and the combined result must produce a change in the right to equitable relief in the federal courts.

This is not the first time that the argument set forth in the petition for rehearing has been presented in federal courts. In 1789 a mortgagee was entitled in the High Court of Chancery of England to a decree of strict foreclosure forever barring the rights of the mortgagor without any period of redemption. When the state of Illinois passed a law requiring a sale of the mortgaged premises and giving to the

mortgagor a year within which to redeem his property, the federal court of that state, responding to the argument that is here made that state statutes cannot in any way affect the equitable jurisdiction of federal courts, passed a decree of strict foreclosure denying to the mortgagor the benefit of the state statute. The case was taken to the Supreme Court. It is the case of Brine v. Insurance Co., 96 U. S. 627, 24 L. Ed. 858. The argument is presented there with such fullness that we shall quote from the opinion at length:

"It is denied that these statutes are of any force in cases where the decree of foreclosure is rendered in a court of the United States, on the ground that the equity practice of these courts is governed solely by the precedents of the English Chancery Court as they existed prior to the Declaration of Independence, and by such rules of practice as have been established by the Supreme Court of the United States, or adopted by the Circuit Courts for their own guidance. And treating all the proceedings subsequent to a decree which are necessary for its enforcement as a matter of practice, and as belonging solely to the course of procedure in courts of equity, it is said that not only do the manner of conducting the sale under a decree of foreclosure, and all the incidents of such a sale, come within the rules of practice of the court, but that the effects of such a sale, on the rights acquired by the purchaser and those of the mortgagor, and his subsequent grantees, are also mere matters of practice to be regulated by the rules of the court, as found in the sources we have mentioned.

"On the other hand, it is said that the effect of the sale and conveyance made by the commissioner is to transfer the title of real estate from one person to another, and that all the means by which the title to real property is transferred, whether by deed, by will, or by judicial proceeding, are subject to, and may be governed by, the legislative will of the state in which it lies, except where the law of the state on that subject impairs the obligation of a contract. And that all the laws of a state existing at the time a mortgage or any other contract is made, which affect the rights of the parties to the contract, enter into and become a part of it, and are obligatory on all courts which assume to give remedy on such contracts.

"We are of opinion that the propositions last mentioned are sound; *and if they are in conflict with the general doctrine of the exemption from state control of the chancery practice of the federal courts, as regards mere modes of procedure, they are of paramount force, and the latter must to that extent give way. It would seem that no argument is necessary to establish the proposition that when substantial rights, resting upon a statute, which is clearly within the legislative power, come in conflict with mere forms and modes of procedure in the courts, the latter must give way, and adapt themselves to the forms necessary to give effect to such rights.* * * *

"*If one or the other must give way, good sense unhesitatingly requires that justice and positive rights, founded both on valid statutes and valid contracts, should not be sacrificed to mere questions of mode and form.* * * *

"It is not denied that in suits for foreclosure in the courts of that state the right to redeem within 12 months after the sale under a decree of foreclosure is a valid right, and one which must govern those courts.

"Nor it is pretended that this court, or any other federal court, can in such case review a decree of the state court which gives the right to redeem. This is a clear recognition that nothing in that statute is in conflict with any law of the United States. If this be so, how can a court, whose functions rest solely in powers conferred by the United States, administer a different law which is in conflict with the right in question? To do so is at once to introduce into the jurisprudence of the state of Illinois the discordant elements of a substantial right which is protected in one set of courts and denied in the other, with no superior to decide which is right. * * *

"*We are not insensible to the fact that the industry of counsel has been rewarded by finding cases even in this court in which the proposition that the rules of practice of the federal courts in suits in equity cannot be controlled*

*by. the laws of the states, is expressed in terms so emphatic and so general as to seem to justify the inference here urged upon us.* But we do not find that it has been decided in any case that this principle has been carried so far as to deny to a party in those courts substantial rights conferred by the statute of a state."

Missouri, Kansas & Texas Trust Co. v. Krumseig, decided in this court, 77 Fed. 32, 23 C. C. A. 1, and affirmed in the Supreme Court, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474, involved a usury statute of the state of Minnesota, which declared that all mortgages tainted with usury should be void, and should be canceled by the court. This statute, as interpreted by the highest court of Minnesota, is directly in conflict with a principle of equity law and practice uniformly enforced in the High Court of Chancery in England, and in the federal courts, which requires that any person seeking relief against a usurious mortgage shall do equity by paying the amount of the debt, with legal interest. The plaintiff brought the suit to have the mortgage canceled for usury, without making the tender required by this ancient rule of equity jurisprudence. It was urged that the statute of the state could not alter or impair the system of jurisprudence as administered in federal courts of equity. The argument as applied to the particular case was persuasive. It divided this court and produced a strong dissenting opinion. The majority of the court, however, upon a careful review of the decisions of the Supreme Court, held that the statute was binding upon federal courts. The reasons for the rule have never been better stated than in the prevailing opinion rendered at that time. The case was taken to the Supreme Court and affirmed. We shall not prolong this opinion by quoting from either of the opinions. They are not only binding upon us as authority, but meet with our entire approval as a sound exposition of the law.

We are convinced that the right of a state to provide for the prompt payment of its revenues stands upon ground quite as clear and high as its right to regulate the transfer of property by private individuals, or to prescribe the relief to be given against a usurious contract. We are aware that the right which the statutes gives may not be as advantageous to property owners as the former right to keep their money and litigate the tax. What we insist is that the whole matter lies in the field of substantive law, where the Legislature, acting within constitutional limits, has the right to prescribe the rule. This is not only true as a matter of power, but the history of taxation as written in the opinions of the Supreme Court shows that the legislation is amply justified on grounds of public policy.

It is urged in the petition that the statute has not been held by the courts of Colorado to exclude a resort to equity. We have examined all the authorities cited, and have reached the conclusion that there is no decision in the Supreme Court of Colorado which qualifies the exposition given in Board of Commissioners of Bent Co. v. Atchison, Topeka & Santa Fé R. R. Co., 52 Colo. 609, 125 Pac. 528; nor is there any decision of that court in which the question has been raised and considered in which the right to restrain the collection of taxes by injunction has been sustained. We further observe that the Supreme

Court had before it this question in the Singer Sewing Machine Company Case, and there ruled that the statute of Colorado affords a plain, speedy, and adequate remedy, such as excludes a resort to equity, unless circumstances are shown which render the remedy inadequate. The Supreme Court in that opinion also reviewed the decisions of Colorado, and ruled that this was the interpretation of the statute given by those decisions. We consider these views binding upon us.

We will add a word in regard to "equitable circumstances." In the original brief and in the brief in support of the petition counsel for appellant contend that whenever any equitable circumstance, such as fraud, cloud upon title, or multiplicity of suits, exists, a case is made out which will support jurisdiction in equity, and an injunction to restrain the collecton of the tax. This, however, is the rule, in the absence of a statute like that of Colorado. From the decision in Dows v. Chicago, 11 Wall. 108, 20 L. Ed. 65, to the present time, the Supreme Court has declared with increasing emphasis that no relief can be given in a federal court of equity against the collection of a tax, whatever the cause of its invalidity may be, unless one or more of these equitable circumstances are shown to exist. The result of counsel's argument is that the same rule is applied with the statute as without it. The contention, if sustained, would completely nullify the statute as a means of securing the prompt payment of public revenues. What effect should legislation like the statute of Colorado have upon these equitable circumstances? Take, for example, cloud upon title. Equitable jurisdiction under that head arose out of the fact that the payment of the tax was treated at common law as voluntary. If the property owner removed the cloud by paying the tax, he had no remedy by which he could recover his money. The only way in which he could relieve his property from the lien of the illegal tax, without forfeiting his money, was to go into equity. It is entirely plain that a statute like that of Colorado removes this ground of equitable jurisdiction. Under its provisions the property owner may pay the tax, and if he can show that any part of it is illegal he has the right to recover the same without abatement. Every tax upon real property is a cloud upon its title. Has every owner of such property in Colorado, who believes a tax upon it to be invalid, the right to go into equity, enjoin the collection of the tax, and have it canceled as a cloud upon his title? Would not the courts say to such a plaintiff:

"Pay your tax. That will remove the cloud. Then, if you can show that any part of the tax is invalid, you will be entitled to a proportionate refund of your money."

There are circumstances under which the enforcement of the right given by the statute would lead to results against which equity will grant relief. Taylor v. Louisville & Nashville R. R. Co., 88 Fed. 351, 31 C. C. A. 537; and Fargo v. Hart, 193 U. S. 490, 24 Sup. Ct. 498, 48 L. Ed. 761, are good examples of this class. There state boards of equalization were about to certify to a large number of counties taxes which were shown to be illegal. When thus certified it became the duty of the local officers to enforce their payment. Complainants, to avail themselves of the statute, would have been compelled to maintain a

222 F.—42

large number of independent suits at law, and the right to go into equity is based upon the ground of preventing this multiplicity of suits. The whole matter is made clear in Pullman Co. v. Tamble (C. C.) 173 Fed. 200. There suit was brought against the collection officer of a county to restrain the enforcement of a tax after it had been certified to the several counties of the state. Taylor v. Louisville & Nashville R. R. Co., 88 Fed. 350, 31 C. C. A. 537; and Fargo v. Hart, 193 U. S. 490, 24 Sup. Ct. 498, 48 L. Ed. 761, are distinguished in a careful opinion, and the right to resort to equity was denied. The Pullman Company accepted this interpretation of the statute of Tennessee, similar to the statute of Colorado, paid its tax, and brought suit to recover back the payment. Tamble v. Pullman Co., 207 Fed. 30, 124 C. C. A. 590.

When a statute like that in Colorado exists, complainant, seeking to restrain the collection of a tax, must do more than show some of the equitable circumstances which would support a resort to equity if there were no statute. He must make out a case of quite exceptional character, such as Cummings v. National Bank, 101 U. S. 153, 25 L. Ed. 903, which shows a right to enjoin the tax notwithstanding the statute—a case in which compliance with the statute would, in the language of the Supreme Court, cause "irreparable injury." Such a case will be held to fall outside the intent of the law. The answer which the Supreme Court gave in the Cummings Case to the contention that plaintiff had an adequate remedy under a state statute similar to that in Colorado shows what is necessary to give such jurisdiction in equity:

"It is next suggested that, since there is a plain, adequate, and complete remedy by paying the money under protest and suing at law to recover it back, there can be no equitable jurisdiction of the case.

"The reply to that is that the bank is not in a condition where the remedy is adequate. In paying the money it is acting in a fiduciary capacity as the agent of the stockholders—an agency created by the statute of the state. If it pays an unlawful tax assessed against its stockholders, they may resist the right of the bank to collect it from them. The bank as a corporation is not liable for the tax, and occupies the position of stakeholder, on whom the cost and trouble of the litigation should not fall. If it pays, it may be subjected to a separate suit by each shareholder. If it refuses, it must either withhold dividends, and subject itself to litigation by doing so, or refuse to obey the laws, and subject itself to suit by the state. It holds a trust relation, which authorizes a court of equity to see that it is protected in the exercise of the duties appertaining to it. To prevent multiplicity of suits, equity may interfere."

It is further urged as an equitable circumstance that the case involves complicated issues and difficult mathematical calculations, unfit for trial by jury. The case does not seem to us more difficult than many commercial causes that are tried by jury. If, however, the ascertainment of the amount of refund to which plaintiff would be entitled should involve issues so complex as to support a resort to equity, it may go into equity for that purpose. That, nevertheless, would furnish no ground for an injunction to stay the collection of the tax, the denial of which is the basis of this appeal. To suspend payment of public revenue during litigation is to defeat the object of the statute. Surely a court of equity will not do that without cause any more than

a court of law. Ascertaining the amount of plaintiff's refund, if any, by a chancellor, is no more cause for enjoining the tax than the same assessment by a jury would be. As the plaintiff has not paid its tax, it has no standing in any court, either of law or equity, to have the amount of its refund, if any, ascertained.

We have carefully examined the petition for rehearing, and find in it no cause to modify our opinion. It is therefore denied.

HOOK, Circuit Judge (concurring). No one will seriously contend that a state may define or regulate the equity jurisdiction of the courts of the United States. On the other hand, it cannot be doubted that the materials upon which that jurisdiction operates may be proper subjects of state legislation, and that changes in the substantive structure of rights may have an important effect upon the method of judicial enforcement or administration. Again, in cases not inherently of exclusive equitable cognizance, but where the right to resort thereto rests upon an inadequacy of the remedy at law, it would seem clear that a legislative act of the state making the remedy adequate would, with section 723, Rev. St., result in a loss of jurisdiction in equity. So the doctrine stated at the outset should not be taken too broadly. I also think that, whenever the question whether a remedy at law given by a state statute is plain, adequate, and complete arises in a court of the United States having the fundamental grounds of federal jurisdiction, it is for that court to determine. In other words, the statute cannot foreclose the consideration of such a question.

In the case at bar I would feel constrained to follow the decision in Atchison, T. & S. F. R. Co. v. Sullivan, 173 Fed. 456, 97 C. C. A. 1, were it not for the later case of Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 Sup. Ct. 942, 57 L. Ed. 1288. And it is with some hesitation that I conclude that the latter rules the sufficiency of the remedy at law in Colorado in a case like that set up in the bill of complaint.