PORTO RICO MERCANTILE COMPANY, Complainant,

*v.*

J. W. BONNER, AS TREASURER OF PORTO RICO,
Dft.

San Juan, Equity, No. 1204.

Opinion filed June 26, 1923.

*Mr. O. B. Frazer* and *Mr. Nelson Gammans* for complainant.

*Hon. H. P. Coats,* Attorney General of Porto Rico, and *Hon. J. A. Lopez Acosta,* Assistant Attorney General of Porto Rico, for defendant.

ODLIN, Judge, delivered the following opinion:

The bill filed in this case seeks an injunction against the defendant, who, in his capacity as treasurer of Porto Rico, has demanded payment of the sum of nearly $6,000 claimed to be due by the defendant as alleged income taxes and excess profit

taxes which have been assessed against the complainant, a corporation existing under the laws of the state of West Virginia, by the defendant for the calendar years 1918, 1919, and 1921. It is alleged in the bill that the defendant is acting by virtue of a certain law passed by the legislature of Porto Rico, being No. 80 of the Acts of 1919, which was approved by the then governor of Porto Rico on or about June 26, 1919, and which bill was amended on May 13, 1920, and was re-enacted and extended to July 1, 1921, which bill provides for the taxation of certain income for the benefit of the Insular government of Porto Rico. It appears that § 7 of said act before the amendment and which was in force for the calendar years 1918, and 1919, provided as follows: "In the case of an individual who is a citizen of the United States not residing in Porto Rico, or of a nonresident alien individual, the gross income includes only the income derived from sources situate in Porto Rico, including income and interest on bonds, notes, mortgages and other obligations derived from individuals, corporations or entities of any kind, and including dividends from resident corporations."

It further appears in and by said bill that § 9 of the said law as it was re-enacted in the year 1921, which was in force for the calendar year 1921, provides as follows: "In the case of an individual who is a citizen of the United States nonresident in Porto Rico, or of a corporation, association or partnership organized or constituted in the United States or in foreign countries, the gross income includes only the gross income derived from sources within Porto Rico, or from the sale in the Island or elsewhere of the fruits, products or manufactures harvested, produced or manufactured in Porto Rico; including

also rents, interest on bonds, notes, mortgages or other interest-bearing obligations of residents, whether individuals, corporations or entities of any kind."

Paragraph 9 of said bill sets forth that the tax of $1,715.36 claimed for the calendar year 1918 against the complainant is composed of a normal tax of $1,443.76 and an excess profits tax of $271.60, computed by the treasurer on an assessment of taxable net income in the amount of $48,125.26; that the alleged tax of $1,978.60 for the calendar year 1919 is composed of a normal tax of $1,722 and an excess profits tax of $256.60, computed by the treasurer on an assessment of taxable net income in the amount of $57,400.08; and that the alleged tax of $2,140.24 for the calendar year 1921 is composed of a normal tax of $1,573.20 and an excess profits tax of $567.04, computed by the treasurer on an assessment of taxable net income of $52,-440.01.

The 10th paragraph of said bill sets forth that the complainant has had no income, either gross or net, arising in Porto Rico during the calendar years 1918, 1919, 1920, or 1921, with the exception of the receipt of $16,908.19 of gross income in 1918 from the storage collected by the complainant's storage tanks of a quantity of molasses which belonged to another corporation, and that the complainant's expenses in connection with the services rendered this other corporation in consideration of the payment of the said $16,908.19, including expenses directly chargeable thereto, and the proportionate share of general expenses and upkeep of said tanks, amounted in said year to at least $10,000, which formed a part of the said sum of $16,908.19; and that except for the said sum of $16,908.19

all the profits and income of the complainant for said years above mentioned arose outside the Island of Porto Rico.

Paragraph 11 of said bill is as follows: "That complainant is and at all times hereinafter mentioned has been engaged exclusively in the purchase and sale of molasses; that at all times herein mentioned all sales made by complainant have been made outside the Island of Porto Rico for delivery outside the Island of Porto Rico; that complainant does not now produce nor has it at any time produced molasses within Porto Rico or elsewhere, and in the calendar years 1918 and 1919 no purchases were concluded by complainant within the Island of Porto Rico; that in the calendar year 1921 complainant made certain purchases in Porto Rico for export to the United States and said purchases did not in the aggregate exceed 900,000 gallons, or approximately 13 per cent of the total purchases of complainant for the said year; that except for the purchase of not over 900,000 gallons of molasses in the calendar year 1921, the office of the complainant in Porto Rico has been maintained merely for the purpose of expediting shipments in interstate commerce from Porto Rico to the continental United States, or foreign shipments from Porto Rico to foreign countries, or foreign shipments from the Dominican Republic to the continental United States via Porto Rico, and said office has engaged in no other business except as otherwise herein stated; that no molasses is handled or shipped by complainant in Porto Rico except as part of a shipment in interstate commerce or foreign commerce, to wit, from Porto Rico to the continental United States, or from Porto Rico to foreign countries or from the Dominican Republic to continental United States; that in the calendar year 1921, complainant purchased in the Dominican

Republic 1,775,000 gallons of molasses, constituting about 25 per cent of its total purchases for that year, and the profits of the sale of said Dominican molasses in the continental United States is a considerable part of complainant's income for the calendar year 1921, on all of which defendant has levied and threatens to collect said alleged income and excess profits tax; that except for said molasses handled en route from the Dominican Republic to the continental United States, practically all molasses shipped or handled by complainant in Porto Rico is shipped in interstate commerce from Porto Rico to the continental United States."

The bill then goes on to allege that the defendant, in an endeavor to collect said sums of money above recited, is threatening to attach and seize the property of the complainant and to sell the same, or enough thereof so as to produce at public auction the sum claimed, unless the complainant shall forthwith pay the same. The complainant resists the payment of said taxes upon various grounds, claiming that said act violates the Constitution of the United States, and also the Organic Act of Porto Rico known as the Jones Bill, because the said law of the legislature of Porto Rico, and especially § 9 thereof, as re-enacted in 1921, attempts to levy a tax on income arising outside the jurisdiction and received by foreign corporations and non-residents, and for that reason it attempts to take the property of complainant without due process of law. It is further claimed that said § 9 as re-enacted in 1921, is an attempt to tax property situated outside the jurisdiction or territory with respect to which the legislature of Porto Rico is empowered to legislate, and therefore is operating as depriving the complainant of its property without due process of law. It is further

alleged that said act contravenes the Constitution of the United States, because the said act, and especially the aforesaid § 9 thereof, is an attempt to tax the export of merchandise in interstate commerce from Porto Rico to the continental United States, and therefore unlawfully burdens and trammels, and operates as an unlawful interference with interstate commerce. The complainant further alleges that the said § 9 violates that clause of the Act of Congress passed April 12, 1900, commonly known as the Foraker Act, which was the first Organic Law enacted by the Congress of the United States with reference to Porto Rico, one provision of which is as follows: "In no event shall any duties be collected after the first day of March, 1902, on merchandise and articles going into Porto Rico from the United States or coming into the United States from Porto Rico." [31 Stat. at L. 78, chap. 191, Comp. Stat. § 3749, 7 Fed. Stat. Anno. 2d ed. p. 1260.]

It is further claimed in and by said bill that said legislative act of Porto Rico violates § 58 of the Act of Congress passed on March 2, 1917, commonly known as the Jones Bill, being the Organic Act now in force in the Island of Porto Rico, which provides in part as follows: "That all laws or parts of laws applicable to Porto Rico not in conflict with any of the provisions of this act, including the laws relating to tariffs, customs, and duties on importations into Porto Rico prescribed by the Act of Congress entitled, 'An Act Temporarily to Provide Revenues and a Civil Government for Porto Rico, and for Other Purposes' approved April 12, 1900, are hereby continued in effect, and all laws and parts of laws inconsistent with the provisions of this act are hereby repealed." [39 Stat. at L. 968,

chap. 145, Comp. Stat. § 3803 z, Fed. Stat. Anno. Supp. 1918, p. 630.]

It is further claimed in and by said bill that the legislative act is repugnant to the present Organic Act of Porto Rico because the taxes provided for thereunder are not uniform, and that the rule of taxation therein laid down is not uniform in any way, but on the contrary is discriminatory against complainant and other foreign corporations having property outside the Island of Porto Rico, which corporations sell the products of Porto Rico outside the Island, and requires them to pay a more onerous tax and a higher tax than other corporations engaged in similar business, all of the property of which has been valued and assessed within Porto Rico.

It is further claimed in and by said bill that the said legislative act operates to deny to the complainant company and other companies similarly situated equal protection of the law.

The complainant further claims in and by said bill that the legislative act contravenes the Constitution of the United States, particularly the 5th Amendment thereto; also violates the Organic Act of Porto Rico known as the Jones Bill, because the said legislative act provides for the determination of the legality of the amount of taxes by the treasurer of Porto Rico and the board of review and equalization of Porto Rico through administration action only, and permits collection by administrative attachment or seizure, and that neither said legislative act nor any other law in force in Porto Rico permits a judicial review of the doings of said treasurer and board of review and equalization, or of a judicial determination of the legality and amount of said taxes before the payment of the same is demanded; and it is further alleged that there is no provision in

the said legislative act nor in any other statute or law in force in Porto Rico permitting due and proper judicial review after the payment of the said alleged tax is demanded, and therefore said act operates to deprive the complainant of its property without due process of law.

It is further alleged that before 1921 there was no law in force in Porto Rico other than the Federal Income Tax Law which provided for the taxation of non-Porto Rican corporations on the profits arising outside of Porto Rico from sales outside of the Island of molasses produced in the Island but bought outside of the Island; complainant alleges that it has fully paid all taxes assessed against it on its said income for 1918, 1919, and 1921 by the government of the United States under the Federal Income Tax Law; and that defendant, in his capacity of treasurer of Porto Rico, has promulgated a rule or regulation to the effect that profits arising in the years 1918 and 1919 from the sale of products of Porto Rico made outside of Porto Rico by foreign corporations are taxable under the said act of the legislature of Porto Rico. It is claimed by complainant that such regulation is a departure from the said law and a violation thereof, and hence void and without effect; also that the attempted collection of $1,716.36 for the year 1918 and of $1,978.60 for the year 1919 by the attachment of complainant's property and seizure and sale of the same would constitute the taking of defendant's property without due process of law.

It is further set forth in the bill that the complainant has duly pursued all the remedies allowed him by the laws of Porto Rico and has appealed to the board of review and equalization from the assessment made by the treasurer, the defendant in this bill, and that this appeal was denied by said board; and

it is claimed that inasmuch as no judicial or other further review is allowed by the laws of Porto Rico, complainant has no other redress than to seek an injunction in this court.

The bill further shows that the complainant has not been guilty of any laches or unnecessary delay; and that the appeal to the Board of Review from the assessment of the year 1918 was taken by the complainant three years before the filing of this bill, and with respect to the assessment for 1919 nearly two years before the filing of this bill; that these appeals were denied and notice thereof received by the complainant at the same time that he received notice with respect to the appeal from the taxes assessed for the year 1921, which notice of these three decisions reached the complainant December 14, 1922, shortly before the filing of this bill, which notice was accompanied by a demand for immediate payment; that for over a year preceding said date last mentioned the complainant believed that the said appeals for the years 1918 and 1919 had long since been decided in complainant's favor, and for that reason the complainant believed that no action by it was necessary. It is further alleged on information and belief that the former board of review and equalization rendered a decision with respect to said appeals for the years 1918 and 1919 in favor of the complainant and that this was done a long time before December 14, 1922, and that through some inadvertence either no record of such decision was made in the treasury department now under the control of the present defendant, or that such record has become lost or misplaced.

The bill prays for an injunction restraining the defendant in his capacity as treasurer of Porto Rico from assessing against the complainant either for past years, or for the current

166

year or for future years, or attempting to collect from the complainant any tax under the said Insular Income Tax Law on income derived from sources without Porto Rico or on profits arising from sales made outside of Porto Rico of the fruits, products, and manufactures of Porto Rico as well as of fruits, products, and manufactures which are harvested, produced, or manufactured outside of Porto Rico; also from attempting to attach, seize, or sell any property of the complainant under the pretext of enforcing such assessment or tax, not only those already made as aforesaid, but similar future assessments of taxes, and from in any other manner enforcing or attempting to enforce the payment of such taxes on said income.

With respect to the taxable net income of said complainant arising in Porto Rico for the calendar year 1918, and the lawful income, and excess profits taxes which may be due thereon, they shall be ascertained and determined by a proper order of this court, and that the defendant, in his capacity as treasurer of Porto Rico, be perpetually enjoined from collecting or attempting to collect from this complainant any income or excess profits taxes for said calendar year 1918 in excess of the amount so ascertained and determined by this court.

The bill further prays that pending the determination of this cause, and until final hearing, a temporary injunction be issued, which shall prevent the defendant, in his capacity as treasurer of Porto Rico, from assessing, enforcing, or attempting to enforce against the complainant any income or excess profits taxes for the years 1918, 1919, and 1921, as well as from assessing or enforcing or attempting to enforce against the complainant any income or excess profits taxes for subsequent years on income derived from sources without Porto Rico, or on

profits arising from sales outside of Porto Rico of the fruits, products, or manufactures which have been harvested, produced, or manufactured either in the Island of Porto Rico or outside the Island of Porto Rico.

There follows a prayer for general relief and the bill is duly verified.

The solicitors for the defendant have filed on January 27, 1923, a motion to dismiss, basing the same upon four grounds: First, that the bill shows no valid cause of action in equity; second, that the bill does not show that the taxes described in the bill are illegal or unconstitutional, and that the bill does not show that the defendant has done, is doing, or is about to do any act in the collection of said taxes which he is not lawfully authorized to do; third, that the legislative act of Porto Rico known as Act No. 80 of 1919, called the Income Tax Law, both in its original form and as subsequently amended, is constitutional and valid; and fourth, that Act No. 43 of 1921, known as the Income Tax Law of Porto Rico, and passed by the legislature of Porto Rico, and especially § 9 thereof, is constitutional and valid.

This important matter has been elaborately argued by counsel and has been carefully considered by this court. Of course upon the motion to dismiss the bill must be considered as true. It is clear to me that the decision of the United States Supreme Court rendered by Mr. Justice Field in the case of State Tax on Foreign-held Bonds, reported in 15 Wall. 300, 21 L. ed. 179, must control the present case. It was there held that the tax laws of the state of Pennsylvania could have no extraterritorial operation; also that any tax law of a state inconsistent with the terms of a contract made with parties outside of the

state, or payable to parties outside of the state cannot have any effect upon the contract whilst it is in the hands of such parties of other nonresidents of the state. It will of course be conceded that the legislature of Porto Rico can have no greater power than the legislature of the state of Pennsylvania.

There is a decision of the United States Supreme Court much later than the one last referred to, which seems to me to have a direct bearing upon the question now presented to this court. Reference is had to the case of the Union P. R. Co. v. Weld County. The decision is quite short, written by Mr. Justice Van Devanter, and reported in 247 U. S. 282, 62 L. ed. 1110, 38 Sup. Ct. Rep. 510. This was a case where the railroad company asked for an injunction against the collection of a portion of the taxes which had been levied upon its property in the county of Weld, state of Colorado, which injunction had been denied by the district judge and also by the circuit court of Appeals for the Eighth Circuit, as reported in 133 C. C. A. 392, 217 Fed. 540, and 138 C. C. A. 175, 222 Fed. 651. Both these decisions were reversed by the Supreme Court of the United States in 1918, and the rule is there laid down that a Federal court in a case of this nature is empowered to enjoin the collection of taxes which are illegal and discriminatory, and where the existence of an adequate and complete remedy at law is doubtful. The two lower courts were of the opinion that the railroad company did have a plain, adequate, and complete remedy at law. It appeared that the remedy at law was to pay these taxes and then bring suits to recover them back, in which event separate actions would be required against distinct school districts and towns; the Supreme Court held that this would not displace the equitable remedy by injunction in one suit. Of

course this case in 247 U. S. 282, 62 L. ed. 1110, 38 Sup. Ct. Rep. 510, is not like the present case in details, but the doctrine there laid down is applicable here because in each case there was no satisfactory and complete remedy at law, or, if such remedy at law existed, there was grave doubt as to its being adequate and complete. It appears that the state of Colorado, according to the statute in force in 1908, did provide a plain, adequate, and complete remedy at law in cases of illegal taxes by requiring the board of county commissioners to refund them when paid and by conferring, impliedly, on the taxpayer a right to recover them by means of one single action against said board, although the taxes had been levied partly for state purposes, partly for school district purposes, and partly for town purposes; but it appeared that a later statute had been passed five years thereafter, the effect of which had not been determined by the highest court of the state of Colorado, and which might be construed as prohibiting the board from making the refund without the approval of the state tax commissioner, and it also might be construed as withdrawing the right of action against the board where the state tax commissioner disapproved the same.

If the treasurer of Porto Rico was obligated to retain as a separate, distinct fund moneys paid under protest by taxpayers who deemed illegal the demands presented against them, I would be very much disinclined to grant relief to the complainant in the present case. But under the present practice in vogue in this Island, it seems that the treasurer, upon receiving moneys paid under protest, merges these moneys with the general funds in his control, and therefore after the taxpayer shall bring his suit to recover, and even if he shall be successful in

obtaining a judgment, he then must wait for the legislature of Porto Rico to make the proper appropriation before the actual refund can be made. Under these changed conditions, I am constrained to hold that in a case like the present one the complainant has no plain, adequate, and complete remedy at law. It would be manifestly unfair to compel a complainant like the one in the present case, if he should finally prevail in his contention, even though he paid the taxes under protest, to wait an indefinite period for his reimbursement.

Looking now at the other side of the case, the defendant, in his capacity as treasurer of Porto Rico, can be fully protected against loss by the bond which the complainant must give before a temporary injunction shall be in force. I have given this case as careful thought and study as I have been able to do, and after full consideration it seems to me my clear duty to grant a temporary injunction in this case, and I therefore,

Order and Direct that a temporary injunction issue in accordance with the prayer of the bill, provided the complainant shall first file a good and sufficient bond in the sum of seven thousand dollars ($7,000).

To this order the counsel for the defendant except.

Done and Ordered in open court at San Juan, Porto Rico, this 26th day of June, 1923.