## KIEFFER et al. v. KINNEY–COASTAL OIL CO. et al.*

(Circuit Court of Appeals, Eighth Circuit. November 25, 1925.)

No. 7060.

**1. Public lands ☜39(2)—Remedy afforded by statute to lessee of mineral rights to obtain possession of land occupied by homestead patentee held exclusive.**

Exclusive remedy of lessee under Mineral Lands Leasing Act Feb. 25, 1920 (Comp. St. Ann. Supp. 1923, §§ 4640¼–4640¼ff, 4640¼g–4640¼ss) seeking to exclude homestead patentee filing townsite plat and his grantees, is that provided in Act July 17, 1914, § 2 (Comp. St. § 4640b), requiring payment of damages, or giving of bond for damages, as ascertained by an action instituted for that purpose.

**2. Courts ☜342—Action by lessee of mineral rights to gain possession of land occupied by homestead entryman held not equitable, but in nature of common-law action.**

Action under Act July 17, 1914, § 2 (Comp. St. § 4640b), by lessee of mineral rights, to gain possession of land occupied by homestead entryman and assess damages, held not equitable, but in nature of common-law action.

**3. Equity ☜43—Equity does not lie where plain, adequate, and complete remedy may be had at law.**

Equity does not lie where plain, adequate, and complete remedy may be had at law, under express provisions of R. S. § 723 (Comp. St. § 1244).

**4. Equity ☜46—State statute may provide remedy at law, which will exclude equitable relief.**

A state statute may provide remedy at law, which will exclude equitable relief.

**5. Public lands ☜39(2)—Suit in equity held not to lie to prevent multiplicity of suits.**

Bill by a lessee of mineral rights, under Act Feb. 25, 1920 (Comp. St. Ann. Supp. 1923, §§ 4640¼–4640¼ff, 4640¼g–4640¼ss), against homestead patentee filing townsite plat and his grantees, to enjoin acts interfering with plaintiffs' use of entire surface, will not lie to prevent multiplicity of suits, where plaintiffs did not pursue the remedy under Act July 17, 1914, § 2 (Comp. St. § 4640b).

Appeal from the District Court of the United States for the District of Wyoming; T. Blake Kennedy, Judge.

Suit by the Kinney-Coastal Oil Company and another against Michael F. Kieffer and others. Decree for plaintiffs (1 F.[2d] 795), and defendants appeal. Reversed, with directions to dismiss.

C. D. Murane, of Casper, Wyo. (G. R. Hagens, of Casper, Wyo., on the brief), for appellants.

Joseph C. O'Mahoney, of Cheyenne, Wyo., and Paul P. Prosser, of Denver, Colo.

*Rehearing denied February 13, 1926.

(D. Avery Haggard, of Cheyenne, Wyo., and Edward M. Freeman, of Denver, Colo., on the brief), for appellees.

Before LEWIS and KENYON, Circuit Judges, and MUNGER, District Judge.

LEWIS, Circuit Judge. This suit presents a controversy over the respective rights of the parties in 80 acres of land in the Wyoming oil fields. The eighty and other public lands there were classified as valuable for oil and gas deposits and withdrawn from entry. Thereafter the Act of July 17, 1914, 38 Stat. 509 (Comp. St. §§ 4640a–4640c), was passed, which provides that lands of the United States so withdrawn, containing such deposits, might be entered and purchased, if otherwise available, under the non-mineral land laws of the United States, subject, however, to a reservation to the United States of their mineral deposits, together with the right to prospect for, mine and remove the same. In 1918 Michael F. Kieffer, one of the appellants, made a homestead entry on 320 acres, including the 80 acres in controversy, and in October, 1923, received a patent from the United States conveying to him the 320 acres, with the reservation provided for in the Act. The reservation contained in the patent is set up in the answer, and is in these words:

"Also excepting and reserving to the United States all the oil and gas in the lands so patented, and to it, or persons authorized by it, the right to prospect for, mine, and remove such deposits from the same upon compliance with the conditions and subject to the provisions and limitations of the Act of July 17, 1914 (38 Stat. 509)."

The patent contained no restrictions on the use of the surface by Kieffer or his assigns, nor on his right to convey it. Kieffer fenced the 320 acres, made other homestead improvements, but not on the eighty, and has continued to live there.

On August 9, 1922, the United States gave a lease to appellee, Kinney-Coastal Oil Company, by which it granted to and gave that company the exclusive privilege and right to drill for, mine, extract, remove and dispose of all the oil and gas deposits in and under the 80 acres and other described lands, in all 480 acres, in the Salt Creek Oil Field; together with the right to construct and maintain thereupon all works, building, plants, waterways, roads, telegraph or telephone lines, pipe lines, reservoirs, tanks, pumping stations or other structures necessary to the full enjoyment thereof, for a period of twen-

ty years, with a preference right in the lessee to renew the lease for successive periods of ten years. The lease was given under the Mineral Lands Leasing Act of February 25, 1920, 41 Stat. 437 (Comp. St. Ann. Supp. 1923, §§ 4640¼–4640¼ff, 4640¼g–4640¼-ss), and among other considerations therefor to the lessor expressed in the lease the lessee agreed to give 25 per cent. of the oil and gas produced from the 80 acres. The Act of July 17, 1914, is entitled:

"An Act to provide for agricultural entry of lands withdrawn, classified, or reported as containing phosphate, nitrate, potash, oil, gas, or asphaltic minerals."

Its second section reads in part thus:

"That upon satisfactory proof of full compliance with the provisions of the laws under which the location, selection, entry, or purchase is made, the locator, selector, entryman, or purchaser shall be entitled to a patent to the land located, selected, entered, or purchased, which patent shall contain a reservation to the United States of the deposits on account of which the lands so patented were withdrawn or classified or reported as valuable, together with the right to prospect for, mine, and remove the same, such deposits to be subject to disposal by the United States only as shall be hereafter expressly directed by law. Any person qualified to acquire the reserved deposits may enter upon said lands with a view of prospecting for the same upon the approval by the Secretary of the Interior of a bond or undertaking to be filed with him as security for the payment of all damages to the crops and improvements on such lands by reason of such prospecting, the measure of any such damage to be fixed by agreement of parties or by a court of competent jurisdiction. Any person who has acquired from the United States the title to or the right to mine and remove the reserved deposits, should the United States dispose of the mineral deposits in lands, may re-enter and occupy so much of the surface thereof as may be required for all purposes reasonably incident to the mining and removal of the minerals therefrom, and mine and remove such minerals, upon payment of damages caused thereby to the owner of the land, or upon giving a good and sufficient bond or undertaking therefor in an action instituted in any competent court to ascertain and fix said damages."

In 1922 the lessee began the sinking of an oil well on one of the forties, and completed it in August, 1923. Its production is about 80 barrels per day. It also placed stakes at eight or nine different points on that forty

early in February, 1924, as an indication of its intention to put down other wells at those points. In January, 1924, Kieffer and wife filed in the office of the county clerk of Natrona county, the county in which said 80 acres is situate, a townsite plat covering the forty on which the well had been sunk, wherein the entire forty was divided into blocks, lots and streets as the Edgerton townsite; and shortly thereafter they sold more than half of the lots to divers and sundry persons, each deed, however, excluding mineral rights in the oil and gas, reserving them to the United States in the same language in which they were reserved in the patent. The purchasers have constructed buildings on some of the lots; none of them is of brick or stone; most of them are frame buildings; some are of galvanized iron and some have tent tops. Most of them are occupied as residences. There is a clothing store, a grocery store, a dance hall, a café, a pool hall, a garage, a blacksmith shop, a boiler shop and a filling station, about eighty structures in all. Any of them can be easily moved from the tract in a day or less time.

In June, 1924, the Kinney–Coastal Company and the Texas Production Company, the latter having acquired some interest in the lease, brought this suit against Kieffer and wife, some of the purchasers of lots, the county clerk of Natrona county, Edgerton Public Utilities Company and Casper National Bank; alleging that plaintiffs were the holders of an oil and gas lease from the United States covering the 80 acres, that they had the exclusive right to drill for, extract and remove the oil and gas in or under the land, together with the right to construct and maintain all buildings and other improvements for that purpose, that they required the use of all of the surface of the 80 acres and that all of the surface was necessary for the production and removal of oil therefrom, that Kieffer and wife had filed a townsite plat on one of the forties with the county clerk of Natrona county and were about to file a like plat on the other forty, that the placing of buildings on the lots and the improvement of the tract as a town would be an obstruction to the exercise of the rights of plaintiffs under their lease and work an irreparable injury to them which could not be compensated in damages, and they prayed injunctive relief—

(a) That Kieffer and wife be restrained from selling town lots on the tract, from delivering or contracting to deliver deeds therefor, from erecting or encouraging the erection of dwellings or other structures there-

on, and from filing a townsite plat on the other forty.

(b) That the county clerk be restrained from filing and recording any deed or instrument purporting to convey any lot or lots within the townsite and from accepting, filing or recording a townsite plat on the other forty.

(c) That the defendant lot owners and all lot owners be restrained from erecting or maintaining any dwelling house or other structure upon the land and from using or attempting to use any of the surface thereof during the life of plaintiffs' lease.

(d) That the Edgerton Public Utilities Company be restrained from further prosecuting its application before the Public Service Commission of the State of Wyoming for a certificate of public convenience and necessity for the laying of gas mains and the erection of a water system on the platted forty.

(e) That the defendant Casper National Bank be restrained from further acting as escrow holder of deeds executed by Kieffer and wife conveying lots in the townsite and from receiving or delivering any such deeds; and that plaintiffs be decreed to be entitled to the use of all of the surface of the 80 acres during the life of their lease, and that the townsite plat on the forty be decreed to be invalid.

Defendants in their joint answer admitted that Kieffer obtained his title to the 80 acres subject to the reservation contained in the patent, that plaintiffs held the lease which they claimed and that they were entitled to occupy and use all of the surface necessary to develop the oil and gas deposits thereunder and recover and remove the same, but denied that all of the surface of the tract was necessary or needed for that purpose. They alleged that the rights of plaintiffs had never been denied or interfered with by any of the defendants, that they were willing to enter into negotiations with plaintiffs for settlement of damages to defendants or to have those damages adjudicated in accordance with the Act of July 17, 1914; asserted a right in Kieffer and wife to plat the tract as a townsite, to file a townsite plat or plats for that purpose, to sell the lots, and that the purchasers had a right to improve them. They alleged that the acts complained of were not in violation of the rights of plaintiffs, that those acts did not interfere with the enjoyment of the lease and that plaintiffs were not injured or damaged thereby. They relied on the procedure pointed out in the second section of the Act of July 17, 1914, as

the method to be pursued in settling the controversy, if any; challenged the equity jurisdiction of the court and moved that the bill be dismissed.

On final hearing the court found that the 80 acres are practically all within the producing structure of the Salt Creek field, and that practically the entire surface of the lands in controversy is necessary for the full development and reasonably economical, efficient operations of plaintiffs, that if the tract were improved and occupied as a townsite and also developed for its oil and gas deposits there would be grave hazard to explosions and fires and endanger the lives of those living there and those there in plaintiffs' employ; and the relief prayed for was granted. The defendants were enjoined from the use and occupancy of the land or any part of it for residence, commercial or other purposes during the life of the oil and gas lease. Kieffer and wife were enjoined from proceeding with the sale or completing the sale of town lots thereon, from erecting thereon or encouraging others to erect thereon any structures, improvements or works of any kind, from filing with the county clerk a townsite plat on the other forty, and they were ordered and required to take up and remove any gas or water lines that had been placed thereon for the service of residents in the townsite, and to remove from the land any dwelling or structure not used in connection with agricultural use of the land, and to place the land occupied by such dwellings or improvements as nearly as possible in its natural state; restricting its use, if any, to agricultural purposes. The individual defendant lot owners were enjoined from using any gas or water conducted to them in lines then on the townsite, and from maintaining or occupying, or inducing the occupancy of any dwelling houses or other structures on the land, and they were ordered to remove therefrom any dwellings or structures belonging to them or controlled by them on the tract, and to place the land occupied by such dwellings as nearly as possible in its natural condition. The county clerk was enjoined during the life of plaintiffs' lease from accepting, filing and recording any deed or other conveyance purporting to convey any lots within the tract, and from accepting, filing or recording any purported townsite plat on the other forty. The Edgerton Public Utilities Company, controlled by Kieffer, was enjoined from further prosecuting its application before the Public Service Commission of Wyoming for a certificate of public convenience and necessity for the laying

of gas mains and the erection of a water system on the tract, and it was ordered to remove forthwith all water and gas lines theretofore placed thereon. The defendant Casper National Bank was enjoined from further acting as escrow agent of Kieffer and from receiving, accepting or delivering any deeds or other conveyances of town lots embraced within the 80 acres.

The suit and the relief granted were purely equitable. There was no testimony on the question of damages, no finding of the court in relation thereto, and no reference to that subject in the decree.

[1] There is substantial evidence in support of the court's finding that the tract is within the producing structure of the oil field, and that the entire surface will be necessary for the use of plaintiffs in its development and in the production and removal of the oil and gas that will be found. There was testimony to the contrary, but the court's findings of fact have ample support. It had better opportunity to weigh the evidence than we have, and we accept those findings; but in our judgment they do not sustain the decree. For two reasons we think the procedure taken by complainants is not maintainable. Before either party had acquired rights in the tract Congress undertook to regulate the whole subject by the Act of July 17, 1914. By that Act it set out the respective interests that could be acquired and prescribed the procedure against the surface owner as a condition on which the lessee would be entitled to enter upon the land and exercise the rights granted to it. Under section 2 of the Act the lessee's right to occupy the surface was put upon condition of payment of damages caused thereby to the owner of the land, or upon giving a good and sufficient bond therefor; and the amount of damages so to be paid or secured was to be ascertained by an action instituted for that purpose in a court having jurisdiction of the parties and the subject-matter. When the Act of July 17, 1914, was passed it was within the competency of Congress to determine in what way the interests of the United States as the owner of the 80 acres should be disposed of, and to fix conditions and limitations on the rights to be acquired therein. It also had a right to prescribe the procedure for the protection and enforcement of the interests thus to be granted; and when it did so that procedure is exclusive of other remedies and each party is entitled to rely upon it. That statute is the basis of the rights granted to the lessee, it named the conditions and limitations of those rights and prescribes the procedure

for their protection and enjoyment. In Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376, the procedure prescribed by statute was, by implication only, in equity. It was held that the aggrieved party could not be sued at law, and it was said:

"The liability and the remedy were created by the same statute. This being so the remedy provided is exclusive of all others. A general liability created by statute without a remedy may be enforced by an appropriate common-law action. But where the provision for the liability is coupled with a provision for a special remedy, that remedy, and that alone must be employed."

The principle there announced was approved in Globe Newspaper Co. v. Walker, 210 U. S. 356, 28 S. Ct. 726, 52 L. Ed. 1096, the second syllabus reading:

"While a general liability or right created by statute without a remedy may be enforced by an appropriate common-law action, when a special remedy is coupled therewith that remedy is exclusive."

In Haycraft v. U. S., 22 Wall. 81, 98 (22 L. Ed. 738), it is said:

"Both the right and the remedy are, therefore, created by the same statute, and in such cases the remedy provided is exclusive of all others."

In The Harrisburg, 119 U. S. 199, 7 S. Ct. 140, 30 L. Ed. 358, the Chief Justice said:

"The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right."

Here Congress, with full power to do so, undertook to regulate the whole subject, and it conditioned the right of the lessee to take possession of the tract and exclude the homesteader from all or any part thereof upon payment or security of his damages, and it prescribed a procedure to ascertain those damages.

[2-4] Secondly. The answer put in issue the equity jurisdiction of the court, and it is argued here that the right given to appellees by the statute, which is the only right they have against surface owners, is not an equity but a legal right to possession on condition, and that the statute itself clearly prescribes the legal remedy by which that possession may be obtained. The statute seems to plainly indicate that the lessee shall bring the surface owner into court to have the damages assessed. The former knows whether he wants possession, when he wants it and how much of the surface will be needed for his intended uses; the latter does not. In no

proper sense can a proceeding of that character be considered a suit in equity. In Van Norden v. Morton, 99 U. S. 378, at page 380 (25 L. Ed. 453) Mr. Justice Miller, speaking for the court, says:

"We think the rule is settled in this court that whenever a new right is granted by statute, or a new remedy for violation of an old right, or whenever such rights and remedies are dependent on state statutes or acts of Congress, the jurisdiction of such cases, as between the law side and the equity side of the federal courts, must be determined by the essential character of the case, and unless it comes within some of the recognized heads of equitable jurisdiction it must be held to belong to the other."

See also New Orleans v. Construction Co., 129 U. S. 45, 46, 9 S. Ct. 223, 32 L. Ed. 607. The amount of unliquidated damages presents an issue essentially for determination by a jury. The right of each party is a legal right, that of the lessee to possession, that of the surface owner that his damages be first ascertained and paid or secured as the statute directs. We think the procedure required by the statute is in the nature of a common-law action and not equitable. The respective rights of the parties and the remedy given by the statute are much like those involved in a case of condemnation, which has been classified as a common-law action. Traction Co. v. Mining Co., 196 U. S. 239, 247, 248, 25 S. Ct. 251, 49 L. Ed. 462; Kohl v. United States, 91 U. S. 367, 375, 376, 23 L. Ed. 449; Filbin v. United States (D. C.) 265 F. 354, 357. Equity will not lie "where a plain, adequate and complete remedy may be had at law." R. S. § 723, Comp. St. § 1244; United States v. Bitter Root Co., 200 U. S. 451, 472, 26 S. Ct. 318, 50 L. Ed. 550. By the procedure here adopted Kieffer and his grantees were denied the right given them by the Act of July 17, 1914, to have their damages assessed in a law action before their possession is interfered with and they excluded from the tract, and they were denied their constitutional right to a trial of that issue by jury. A state statute may provide a remedy at law which will exclude equitable relief. Singer Sewing Mach. Co. v. Benedict, 229 U. S. 481, 486, 33 S. Ct. 942, 57 L. Ed. 1288; Travelers' Protec. Ass'n v. Gilbert, 111 F. 269, 276, 49 C. C. A. 309, 55 L. R. A. 538; Union Pac. R. Co. v. Board of Com'rs, 222 F. 651, 138 C. C. A. 175.

[5] The contention that equity jurisdiction should be sustained because it will prevent a multiplicity of suits or actions between plaintiffs and the various surface owners cannot be acceded to. It is not charged in the complaint that any of the defendants has sued, or that any of them is about to harass plaintiffs with vexatious litigation. It is not admitted that plaintiffs are liable to the defendants or any of them in damages and that this suit was brought to settle the amount of those damages, and thus relieve plaintiffs from bringing actions at law for that purpose as to each surface owner and claimant. No such adjudication is sought in this bill. The pleadings and the proof show that only a small number of those who have purchased lots from Kieffer were made defendants. There are many more who are not parties. It is further shown that many, if not all lot owners are willing to enter into negotiations with plaintiffs looking to an amicable adjustment of their differences, and if such settlements cannot be made it is claimed in the answer, and argued here, that plaintiffs have no right to exclude claimants to the surface therefrom and to take and use it under the lease without first complying with the requirements of the Act of July 17, 1914, and having the damages to the surface owners settled and paid or secured. Conceding, as the court found, that all of the surface is needed by plaintiffs, the only claim made by surface owners is that of damages. The damage to one owner is separate and distinct from the damage to any other owner, and we see no common point of litigation in which they are all jointly interested, no point in dispute which, when adjudicated, will settle the rights of all of the surface owners. The only point in controversy between plaintiffs and them is the damages that will be suffered by each surface owner. The adjudication of those damages as to one owner will not determine the amount to which another owner may be entitled. The principle relied on has no application to the facts disclosed by the pleadings and the testimony in the case. Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380; Kirwan v. Murphy, 189 U. S. 35, 54, 23 S. Ct. 599, 47 L. Ed. 698; United States v. Bitter Root Co., 200 U. S. 451, 479, 26 S. Ct. 318, 50 L. Ed. 550; Washington County v. Williams, 111 F. 801, 813, 815, 49 C. C. A. 621; Boise Artesian Water Co. v. Boise City, 213 U. S. 276, 286, 29 S. Ct. 426, 53 L. Ed. 796.

As to the measure of damages to be applied we express no opinion. The improvements that have been placed upon the lots were made with full knowledge of the rights of the lessee; purchasers knew that if their improvements remain there after the lessee takes possession they may be damaged or

wholly destroyed; and if not attributable to negligence, their loss will be due solely to the exercise of a lawful right by the lessee. Whether that would be damnum sine injuria we do not decide. Whether their condition as to improvements is analogous to that of the owner who constructs his building too near to his boundary line and must go without damages on account of its falling in, although entitled to lateral support, we leave undetermined. These questions cannot be considered and decided until they have been properly presented below and there ruled on.

Our judgment is that the decree must be reversed with directions to dismiss the bill and leave appellees to their statutory remedy.

It is so ordered.