No. 9080.

ANTERO AND LOST PARK RESERVOIR COMPANY *v*. COUNTY COMMISSIONERS OF PARK COUNTY.

TAXATION—*Dam of Reservoir*. The dam of a reservoir collecting and storing water for irrigation is not taxable.

A judgment approving the assessment thereof as in fact of unsold water rights, not sustained by the evidence, but based on mere conjecture, reversed.

*Error to Park District Court, Hon. James L. Cooper, Judge.*

Messrs. OWEN & CLARK, for plaintiff in error.

Mr. M. I. O'MAILIA, Messrs. HARTENSTEIN & McGINNIS, for defendant in error.

Mr. Justice Garrigues delivered the opinion of the court.

April 1, 1910, plaintiff in error, as owner of the Antero reservoir, situated in Park County, Colorado, made out and returned to the County Assessor, as the law requires, its tax schedule of what purported to be its taxable property located in that county. This schedule contained the land covered by the dam and reservoir site, but omitted to list the reservoir dam constructed by the company upon the land, the owner claiming it was not assessable. The assessor claimed the dam was assessable and taxable as an improvement upon the land, and July 7th wrote the company that he intended to list the dam for taxation, and requested it to kindly furnish him with the amount they had expended on the reservoir dam up to the first day of April, 1910, as a basis for taxing the dam.

July 16th the company replied that it had expended on account of the construction of the Antero dam the sum of $128,751.41 up to April 1, 1910, but denied that the dam was assessable or taxable, and denied the right of the assessor to make such an assessment on the dam.

Notwithstanding this, upon receipt of the letter, the assessor increased or added to the owner's tax schedule of taxable property, the Antero reservoir dam, under the classification of "improvements," which he claimed the owner had omitted from the schedule, and which he assessed at $42,900.00 for the purpose of taxation, being one-third the cost of construction, and notified the company of this additional assessment.

August 17th the company filed with the assessor its written objections to this assessment upon the ground that the Antero reservoir dam was assessed by the assessor at $42,-900.00 as an improvement upon the land upon which it stood, was not subject to separate assessment and was not an improvement upon the land comprising the dam site, within the meaning of the word "improvements" as used in the revenue laws of Colorado, and was not taxable, and

for the forther reason that the owners of the reservoir water rights were also owners of land upon which the water was applied, which rights were taxable and taxed as improvements upon the land upon which the water was used, and that the water rights were not subject to separate or double taxation.

August 27th, the assessor answered in writing, in overruling these objections, that he assessed for taxation the reservoir dam as such as an improvement upon the land at the valuation of $42,900.00 upon the basis of one-third of the amount expended by the company in the construction of the dam up to April 1, 1910, as obtained from figures furnished him by the company at his request; that in the tax schedule made by him he used the word "improvements" in accordance with the definition of that term in Section 13, S. L. 1902, p. 45, and understood that the company's only objection to the tax was to the assessment of the reservoir dam, and that he assessed the dam for taxation upon a duplication value of its cost.

The tax being unpaid, September 29, 1911, the county treasurer notified the company that its 1910 tax, with interest, amounted to $1,066.85, and that he would advertise October 20th, and afterwards did advertise that the reservoir would be sold for taxes on November 20th.

The complaint alleges that a tax sale would have harassed and embarrassed the company in the discharge of its obligations and cast a cloud upon its property, and injure its credit and financial standing, to avoid which it paid the tax under protest.

December 18, 1911 it began this action under section 202, S. L. 1902, p. 146, to recover from the county the tax on the dam paid under protest.

The assessor testified on the trial that he assessed all property in the county that year at one-third its cash value, because the county assessors and the state board agreed to that course; that he assessed plaintiff in error's property upon what he called a physical valuation; that is, he as-

sessed the lands of the company, including the site of the dam and reservoir, the same as adjacent lands belonging to other taxpayers (which tax is not in dispute) ; that before assessing the dam he interrogated the company as to the cost of construction of the dam up to April 1, 1910, and obtained from them the amount expended upon the dam up to that date, and then assessed the dam at one-third of this amount, classifying it on the schedule as "improvements" upon the land upon which the dam was erected; that the company denied his right to assess the reservoir dam, and filed with him a written protest against such assessment and tax; that the amount of assessment exceeding $7,500.00 he answered in writing, denying the objections.

Paul M. Clark, an attorney for the company, testified that water rights in the reservoir had been sold for the irrigation of 11,000 acres of land lying under the high line canal, and that the remainder of the rights in the reservoir were under contract of sale to the East Denver Irrigation district for use in Adams County. There was no other evidence as to there being remaining or unsold rights in the reservoir, their number, or value.

The court found that the company was organized for the purpose of selling water rights; that there still remained in the reservoir, at the time of the assessment, unsold water rights belonging to the company; that it owned no land upon which to apply them, but held them for sale; that the dam as such of itself was valueless, and not an improvement upon the land; that the essential asset held by the company was its remaining water rights in the reservoir; that the cost of construction of the dam in no way indicated the value of the remaining water rights owned by the company in the reservoir; but that the assessor intended to assess these remaining water rights, and simply measured their value for the purposes of taxation by the cost of construction of the dam; that the cost of constructing the dam may be, or equal, the true valuation for taxation of

such remaining water rights in the reservoir, and that the evidence failed to show that such valuation if applied to the water rights is unjust or erroneous. The court was, therefore, of the opinion that the reservoir company still had water rights remaining in its reservoir, subject to taxation somewhere, and that it was such rights, and not the dam, that the assessor intended to list for taxation, and held that, because the company failed to show that the tax was unjust, particularly in view of the fact that the court could not direct a new assessment of the water rights, and the company would escape taxation on them if the levy was set aside, the tax on the dam would not be disturbed, and entered judgment accordingly, and plaintiff brings the case here for review on error.

1.    The reservoir rights used upon land lying under the high line canal were, under our statute, taxable as real estate like improvements in connection with and upon the land on which they were applied, and were not subject to double taxation.    There may have remained water rights in the reservoir subject to taxation in Park County, as to that we express no opinion because it is not involved in the case.    We are dealing with the legality of listing for taxation and compelling the company to pay a tax on the dam as such.    The dam was not subject to separate taxation.    It was not an improvement upon the land within the meaning of our Revenue Laws.

*Kendrick v. Twin Lakes Res. Co.,* 58 Colo. 281; *Shaw v. Bond,* Colo. —, 171 Pac. 1142.

2.    The court found water rights remaining in the reservoir were subject to taxation in Park County, and that the assessor in fact intended to assess such remaining rights, taking the cost of constructing the dam as the measure of their value for taxation, or using this as a means in arriving at their value.    One trouble with the theory is it is not supported by a particle of evidence.    The evidence shows that the assessor not only intended, but in fact assessed the dam as such, and not remaining rights in the reservoir.

This theory was an afterthought evolved by the court, and not by the assessor. The only contention between the assessor and the owner was over the taxation of the dam, and the matter of treating the assessment and value placed upon the dam as the assessment and tax on the remaining water rights appears for the first time in the findings of the trial court.

3. The evidence shows the assessor intended to assess, and in fact did assess the dam, and the only question before the court was to determine whether such assessment was valid. The court conceded that the dam as such was not taxable, and that the water rights used on land in the lower counties were not taxable in Park County, but evolved a theory that the valuation in the schedule placed upon the dam by the assessor may have equalled the valuation of remaining water rights in the reservoir, and inasmuch as plaintiff did not show the contrary, or that the valuation placed on the dam exceeded the valuation of the remaining water rights, the tax on the dam would not be interferred with, notwithstanding the dam as such was not taxable, otherwise the company would escape taxation on water rights it still owned in the reservoir.

4. The course pursued by the court has the merit of being summary, but it is not the law. It is both unjust and erroneous. The statute provides that in all cases where any person shall pay any tax that shall thereafter be found by a court to be illegal or erroneous, whether the same be owing to erroneous assessment, to improper or irregular levying of the tax, to clerical or other errors or irregularities, the Board of County Commissioners shall refund the same without abatement.

The company was obliged on account of this illegal assessment to pay and did pay under protest, an erroneous tax upon the dam. In such a case the statute provides that the county shall refund the tax.

*Judgment reversed and cause remanded.*

Chief Justice Hill and Mr. Justice Scott concur.