No. 12,172.

Boyer Bros., Inc. *v.* Board of County Commissioners of the County of Routt.

(288 Pac. 408)

Decided March 31, 1930.   Rehearing denied May 19, 1930.

276

Messrs. Morrison & DeSoto, Mr. Joseph K. Bozard, for plaintiff in error.

Mr. F. R. Carpenter, Messrs. McComb & Strong, for defendant in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

Boyer Bros., Incorporated, failed in its action against the board of county commissioners of the county of Routt to recover money paid for taxes for the years 1918 to 1923, both inclusive. It seeks a reversal of the judgment.

The plaintiff is a Wyoming corporation engaged in the business of raising sheep in Wyoming. During the summer of each year the plaintiff grazed its sheep on the United States forest reserve in Routt county for varying periods of time, from 73 days in some years to 85 days in others. On March 13, 1916, the plaintiff and the defendant made a written agreement wherein, after stating that there is no Colorado law providing for the payment of taxes by Wyoming sheepmen for sheep brought into Routt county to graze during the summer months, and that the Carbon county (Wyoming) sheepmen feel that "as a matter of equity each of them should pay to the county of Routt a certain sum to cover the expenses of maintenance of the government of Routt county in consideration of the benefits received by said sheepmen through the maintenance of such civil government of Routt county, which sum so to be paid in each year would be equal to a tax levy by Routt county for a full year upon one-third of the sheep of each sheep company entering Routt county in that year," it was agreed that the plaintiff should pay to Routt county "a sum which will equal the amount that would have had to have been paid by the party of the first part [plaintiff] to Routt county for the full year's taxes upon one-third of the sheep brought into Routt county by the party of the first part during the year * * * had such sheep been legally assessable by Routt county * * *." The agreement was to continue in force only during such time as the laws of Colorado and Wyoming governing the taxation of sheep taken

by the Carbon county sheepmen into Routt county for summer grazing "remain as they now are."

We will consider first the rights of the parties prior to the Act of 1921 (C. L. §7249), and then their rights after the passage of that act.

I. Rights of the parties prior to the Act of 1921.

1. That section of the Revenue Act of 1902 (C. L. §5763) concerning the taxation of livestock driven into a county for the purpose of grazing therein we held to be unconstitutional. *Carbon County Sheep & Cattle Co. v. County Commissioners of Routt County*, 60 Colo. 224, 152 Pac. 903. In 1911 that section was amended by adding a proviso not material here. S. L. 1911, c. 191; *Hutchinson v. Herrick*, 70 Colo. 534, 203 Pac. 275.

■ Section 72 of the Revenue Act of 1902 (Rev. Stat. §5608), in force during the time the taxes for 1918, 1919 and 1920 were levied, provided: "Except as otherwise provided herein, personal property shall be listed and assessed in the county where it shall be on the first day of April in the then current year." Plaintiff's sheep were brought into Routt county about July 1 of each year. There was no valid statute of this state authorizing the taxation of the plaintiff's sheep for 1918, 1919 or 1920. The agreement made by the parties did not purport to confer the power to tax the plaintiff's sheep, nor could it have conferred such power if it had attempted to do so. 26 R. C. L., p. 25.

■ ■ The defendant is not entitled to retain the money on the theory that it was paid under the agreement. The agreement was unenforcible. There was no consideration for the plaintiff's promise to pay. The permit to graze its sheep upon the United States forest reserve was granted, not by the county, but by the federal authorities. The county gave nothing and promised nothing by way of consideration. The board of county commissioners had no power to enter into the agreement. Nor is this a case for the application of the principle that one who has received the benefit of an ultra vires contract

is precluded from raising the question of ultra vires, for the plaintiff received no benefit under the agreement.

■ Although the assessment was made under an unconstitutional statute, the county treasurer each year threatened to issue a distraint warrant and to cause property of the plaintiff to be seized and sold thereunder unless the taxes were paid. Under protest, and to avoid the seizure and sale of its property under the illegal distraint warrant, the plaintiff paid the taxes and thereafter demanded a return of the money, with which demand the defendant refused to comply. The plaintiff was entitled to a return of the amount so paid, unless it lost the right by assigning its claim, a question that we will now consider.

■■ 2. On December 1, 1922, the plaintiff executed an assignment of certain of its property to trustees for the benefit of its creditors. The instrument, after reciting the desire of the plaintiff to convey all of its property for the benefit of its creditors, continues: "Now therefore, * * * Boyer Bros., Incorporated, * * * hereby * * * assigns * * * and conveys to [the trustees] all its lands, tenements, hereditaments, goods, chattels, property, assets, interests, equities and choses in action more particularly described and designated as follows:" Here follows a description of various parcels of land in Wyoming, followed by this declaration: "It being the intention of the said Boyer Bros., Incorporated, to convey and transfer * * * all of its real property wherever situated and whether specifically described in this instrument or not." Then follows a list of certain corporate stocks. The property designated as assigned does not include the present claim. Immediately following the description of the property assigned are these words: "To have and to hold the said lands, tenements, hereditaments, goods, chattels, property, assets, equities, interests, and choses in action unto the said parties of the second part, their successors and assigns." The claim sued upon in this action did not pass by the assignment. In *Palmer v.*

280

*McCarthy,* 2 Colo. App. 422, 428, 31 Pac. 241, it is said: "It is a well settled rule of construction, that when the deed in general terms, purports to convey all the property, and afterwards enumerates and designates the property assigned, such special designation controls the general words, makes the assignment special instead of general * * *." And see *Bock v. Perkins,* 139 U. S. 628.

▪ 3. Counsel for the defendant say that the plaintiff was not entitled to bring this action for the reason that it neither alleged nor proved that it presented an itemized and verified claim to the defendant as required, it is said, by C. L., sections 8696 and 8697. There are several reasons why we cannot uphold this contention. Section 8696, C. L., reads as follows: "No *account* shall be allowed by the board of county commissioners, unless the same shall be made out in separate items, and the nature of each item stated, and where no specified fees are allowed by law the time actually and necessarily devoted to the performance of any service charged in such *account* shall be specified; which *account* so made out shall be verified by affidavit; Provided, That nothing in this section shall be construed to prevent any such board from disallowing any *account,* in whole or in part, when so rendered and verified, nor from requiring any other or further evidence of the truth and propriety thereof as they may think proper." That section has no application to claims other than accounts, and the demand involved in this action is not based upon an account. For that reason, and for the reason to be stated in the next paragraph, section 8696, has no bearing on this case.

Section 8697, C. L., contains the following provision: "All claims and demands held by any person against a county shall be presented for audit and allowance to the board of county commissioners of the proper county, in due form of law, before an action in any court shall be maintainable thereon, * * *." Neither that section nor section 8696, C. L., applies to actions to recover money paid for taxes that are illegal. Such cases are governed

by section 202 of the Revenue Act of 1902 (C. L. §7447), which provides that ''in all cases where any person shall pay any tax, interest or cost, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to erroneous assessment, to improper or irregular levying of the tax, or clerical or other errors or irregularities, the board of county commissioners shall refund the same without abatement or discount to the taxpayer.'' In *First National Bank v. Patterson,* 65 Colo. 166, 176 Pac. 498, we said that ''if the tax was not legally laid, plaintiff in error could, upon payment thereof, recover the same from the county under the provisions of §5750 R. S. 1908 [§7447, C. L.].'' In *Kendrick v. A. Y. & Minnie Mining & Milling Co.,* 63 Colo. 214, 164 Pac. 1161, we said: ''But the law has provided a plain, speedy and adequate remedy at law for the hearing and determination of the grievances of plaintiff. It was the duty of complainants in this case to have paid the whole of the tax assessed, and to have proceeded under authority of section 5750, Rev. Stat. 1908 [§7447, C. L.].'' See also *Board of County Com'rs Bent County v. Atchison, Topeka & Santa Fe Ry. Co.,* 52 Colo. 609, 614, 125 Pac. 528; *Neilson v. San Pete County,* 40 Utah 560, 123 Pac. 334. In the Utah case a section of the Compiled Laws provided for the presentation of claims to the board of county commissioners and for appeals from the action of the board rejecting claims. Another section provided that taxes illegally collected may be refunded by order of the board of county commissioners. It was held that the former section has no application to claims for the recovery of taxes illegally collected; that such claims may be enforced under the latter section without being presented to the board of county commissioners for allowance. Counsel are mistaken in supposing that the decision was based upon a statutory provision permitting such action. That the action was not brought under that provision and was not governed by it, is made clear in the opinion. The fact that in *Spaulding Mfg. Co. v.*

*County Commissioners of La Plata County,* 63 Colo. 438, 168 Pac. 34, the plaintiff took the unnecessary step of presenting its claim to the board of county commissioners has no bearing upon the present case.

Even if it were necessary to first present the demand to the defendant, the record shows that the plaintiff complied with the requirement. It is alleged in the complaint that the plaintiff demanded of the defendant a refund of said taxes and that the defendant refused to refund the same, or any part thereof. If the defendant considered the averment too general, it should have filed a motion to make it more specific. Instead of doing so it filed an answer in which it expressly admitted the allegation. In this state of the pleadings it will be assumed, as against the contention here made, that the complaint does not state sufficient facts, that the demand was presented "in due form of law." When the defendant refused to refund the money paid by the plaintiff, it acted upon the demand presented to it.

The judgment for the defendant on these causes of action is erroneous.

II. Rights of the parties after the passage of the Act of 1921.

The Act of 1921 (S. L., c. 199, C. L. §§7249, 7250) is entitled "An Act Regarding the Assessment of Personal Property." Section 1 provides: "All personal property within this state on April first in the then current year shall be listed and assessed in the county where it shall be on said April first." Section 2 is as follows: "If any personal property shall be brought into this state at any time subsequent to the first day of April for any purpose whatever, the owner thereof shall at once file a schedule thereof with the assessor of the county wherein such personal property shall be located, and such property may thereupon be listed by the assessor and assessed for the then current year. On failure of the owner to file such schedule he shall be subject to the penalties provided by section 5609, Revised Statutes of Colorado, 1908, and the

assessor shall proceed to assess such property as provided by the said section 5609; Provided, That if any such personal property so brought into the state after April first in any year shall not remain in the state until the next succeeding April first, such property may be valued for taxation at such portion of its full cash value as the time within the state bears to the full year.''

1. The act is assailed as unconstitutional for the following reasons, as stated by counsel for the plaintiff: ''1. It fails to fix a time when property brought into the state shall have a situs for taxation purposes. 2. It fails to fix a time when property brought into the state shall become a part of the common mass of the property therein. 3. It does not exempt property brought into one county of the state, from out of the state, subsequent to April 1st, which has been assessed in some [other] county in the state. 4. The tax is not uniform. 5. The tax is discriminatory, and is double taxation. 6. It is incapable of enforcement.''

█ The act was designed to avoid those defects that caused us to hold the Act of 1902 to be unconstitutional. We do not think that the Act of 1921 is open to the objections urged against it, so far as the act affects the rights of the plaintiff. At present we are not concerned with the question whether it interferes with the constitutional rights of persons differently circumstanced. The plaintiff can complain only of an invasion of its own constitutional rights. If its rights are not invaded, the effect of the act upon the constitutional rights of others is a matter of no concern to the plaintiff. It cannot appropriate the grievance of others to sustain its attack upon the statute. *Cavanaugh v. People,* 61 Colo. 292, 157 Pac. 200; *Newman v. People,* 23 Colo. 300, 47 Pac. 278; *Heald v. District of Columbia,* 259 U. S. 114, 42 Sup. Ct. 434; *Aluminum Company of America v. Ramsey,* 222 U. S. 251, 32 Sup. Ct. 76; *Murphy v. People,* 225 U. S. 623, 32 Sup. Ct. 697; *Darnell v. Indiana,* 226 U. S. 390, 33 Sup. Ct. 120;

*Mountain Timber Co. v. Washington,* 243 U. S. 219, 37 Sup. Ct. 260.

The plaintiff brought its sheep into Routt county for grazing purposes, and they remained in that county throughout the grazing season. They were "located" in Routt county, within the meaning of the act; that was their situs for taxation purposes.

We need not discuss the third objection urged by counsel, for it is not claimed that the plaintiff's sheep were assessed in any Colorado county other than Routt county.

The question of double taxation, suggested in the fifth objection, is not involved in this case. When someone who claims to have suffered from double taxation raises the question, it will be time for us to deal with it.

To support their contention that the act is discriminatory, counsel for the plaintiff give many illustrations. Most of them are purely conjectural, and do not involve a situation such as this record discloses. The others present situations that are no more serious than those that may occur under every system of taxation; they are insufficient to bring the statute in conflict with the Constitution. The matter must be viewed from a practical standpoint. The ideal is unattainable. Absolute equality in taxation is an impossibility; as said by Mr. Justice Miller, of the Supreme Court of the United States, it is "an unrealized dream." The Act of 1902, held unconstitutional in *Carbon County Sheep & Cattle Co. v. Board of County Commissioners of Routt County,* 60 Colo. 224, 152 Pac. 903, contains discriminatory provisions that are not present in the Act of 1921. We cannot see that the Act of 1921 is an unconstitutional discrimination against the property owned by the plaintiff.

We need not discuss the sixth objection, namely, that the act is incapable of enforcement. So far as this case is concerned, the question is academic; as against the plaintiff the law not only is enforcible, but was enforced, the plaintiff having paid the tax to avoid the seizure and sale of its property under a distraint warrant.

2. Section 2 of the Act of 1921, supra, provides that if any personal property brought into the state after April 1 shall not remain in the state until the next succeeding April 1, it shall be valued for taxation at such portion of its full cash value as the time within the state bears to the full year. Instead of following the statutory method, the assessor continued to follow the practice adopted in 1916; that is to say, he and the representative of the Carbon County (Wyoming) Live Stock Association met once a year and ascertained the number of sheep that ranged in Routt county, and the Routt county assessor assessed one-third of the number and the assessor of Carbon county assessed two-thirds of the number. The plaintiff claims that this method was illegal and rendered the tax void. Although the so-called agreement between the plaintiff and the defendant expired, by its own terms, upon the passage of the Act of 1921, the assessor acted thereafter, as he and his predecessors had done before, under an arrangement or agreement with the Carbon county sheepmen. It was the duty of the plaintiff to file a schedule showing the number of its sheep brought into Routt county. It failed to do so. This, no doubt, was due to the practice, acquiesced in by all parties, of ascertaining the value of the sheep for assessment purposes in the manner described above. The statute provides that upon the failure of the owner to file the required schedule, the assessor shall proceed to assess the property as provided by section 5609 of the Revised Statutes; that is to say, "according to the best information he can obtain." Having been, in part at least, responsible for the assessment in the manner described, and having failed to file a schedule required by law, the plaintiff is in no position to urge, as a ground for recovering the taxes paid by it, the method of assessment followed in this case.

The judgment for the defendant on these causes of action is right.

The judgment for the defendant on the causes of action

involving the taxes for 1921, 1922 and 1923, is affirmed. The judgment for the defendant on the causes of action involving the taxes for 1918, 1919 and 1920 is reversed, and the cause is remanded with the direction to enter judgment for the plaintiff on these causes of action. Each party shall pay its own costs taxed in this court.

MR. CHIEF JUSTICE WHITFORD and MR. JUSTICE CAMPBELL did not participate in the decision.