## No. 12,755.

MILLER ET AL. *v.* BOARD OF COUNTY COMMISSIONERS OF THE CITY AND COUNTY OF DENVER ET AL.

(21 P. [2d] 714)

Decided April 17, 1933.   Rehearing denied May 8, 1933.

Mr. F. E. DICKERSON, Mr. T. J. MORRISSEY, for plaintiffs in error.

Mr. THOMAS H. GIBSON, Mr. KARL C. BRAUNS, Mr. B. F. REED, for defendants in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the trial court and for convenience we refer to them as there.

Plaintiffs brought this action under section 7447, C. L. 1921, to recover the first half of their 1926 tax, paid February 28, 1927, the second half of their 1926 tax, paid

July 19, 1927, and the first half of their 1927 tax, paid February 29, 1928 (all paid under protest), all on Denver real estate, in the total sum of about $17,800, alleging such illegality in assessment and levy as deprived the taxing authorities of jurisdiction. Defendants, maintaining the legality of said assessments, had judgment, to review which this writ is prosecuted. There are six assignments of error and seven of cross-error. The former amount simply to an assertion that plaintiffs have been deprived of their property without due process of law, and the latter to an assertion that plaintiffs failed to state a cause of action and pursued the wrong remedy, by reason whereof defendants' general demurrer to the complaint, motion to dismiss, motion for nonsuit, and objections to testimony, should have been sustained. Numerous and intricate questions are presented by the 140 pages of abstracts and argued in the 230 pages of briefs. We elect to assume, without deciding, that plaintiffs are right as to most of these, and dispose of this litigation on the question of the jurisdiction of the taxing authorities.

Plaintiffs contend that their valuations were greatly increased and that they did not receive the statutory notice thereof; that there was no assessment roll on which they could base the objections which they should have made, and that none was made up, if ever, until the statutory limitation for such objections had passed; that the assessor did not pass upon their necessarily tardy objections until long after they were forced to pay the taxes or incur penalties for nonpayment, and when, if ever, he did so, did not give his reasons in writing as required by law; that by reason of the foregoing they lost their right to a statutory hearing and appeal; that the assessor did not make and file with the tax commission his abstract of assessments, as required by law, hence no appeal by plaintiffs to that body would be availing; that the assessment which was made by the assessor was so made after he had lost jurisdiction by filing with said tax commission a purported abstract; and that plaintiffs' claim for re-

fund has been disallowed by the county. Plaintiffs seek neither a reduction of their taxes nor the refund of excess payments, but demand that the entire assessment be held void, the entire tax illegal, and the total payments be refunded.

We first note briefly those sections of Constitutions and statutes only whose consideration is essential to a determination of the crucial questions presented.

Amendment XIV, section 1, of the federal Constitution provides that no state shall "deprive any person of * * * property without due process of law."

Article II, section 25, of the state Constitution provides that "no person shall be deprived of * * * property, without due process of law."

Article X, section 15, of the state Constitution provides that the board of county commissioners of each county shall be a board of equalization for that county.

Section 7178, C. L. 1921, page 1836, provides that all taxable property shall be listed and valued each year.

Section 7291, Id., page 1865, provides that prior to the first Tuesday in August each year the assessor shall mail to those "whose property has been assessed at a *valuation other than that given in the schedule* filed by such person" a notice of such change and the date when he will sit and hear objections, and give general notice of such hearing by publication. That such hearings "shall be concluded before the day of the first meeting of the county board of equalization"; that one who thinks his property has been "otherwise illegally assessed" or "assessed too high" may be so heard by the assessor, and, if entitled thereto, have the necessary corrections made.

Section 7292, Id., provides that if a taxpayer's total assessed valuation exceeds $7,500, objections to assessment and reasons therefor shall be in writing; if overruled by the assessor his grounds for such action shall be briefly stated in writing; and the taxpayer may appeal therefrom to the court, provided he first pays the dis-

puted tax, which, if he is successful in such suit, shall be refunded to him.

Section 7256, Id., page 1855, provides that no failure of the owner to return property or have errors corrected, and no error or irregularity in assessment or levy, shall affect the legality of the tax levied.

Section 7191, Id., page 1838, and section 7386, Id., p. 1888, chapter 148, p. 439, S. L. 1925, provide that statutory penalties attach to the first half of the tax if not paid before March 1, and to the second half if not paid before August 1.

Section 7317, C. L. 1921, page 1873, provides that not later than January 1, of each year, the assessor shall deliver to the treasurer his tax list and warrant "setting forth the assessment roll, with the taxes extended, containing in tabular form and in separate columns the names of the persons and bodies in whose names property has been listed in his county, with the several species of property and the value, the several taxes levied against the same, to-wit: total state, general county, including pauper and emergency, general school, road, town or city, special school and any other special taxes, and the total amount of taxes, and with the column of numbers and value footed, and commanding the treasurer to collect the said taxes and in a column to be provided for that purpose he shall write the words, 'by the assessor,' when the list was made by himself. At the end of the tax list and warrant he shall prorate the total tax levied to the several funds. Said tax list and warrant shall be in the form approved by the Colorado tax commission."

Section 7318, Id., page 1874, provides that "no informality in complying with the above requirements shall render any proceeding for the collection of taxes illegal."

Section 7268, Id., page 1858, provides that on or before September 1, of each year, the assessor "shall make in duplicate a true abstract of such assessment roll" and file the same with the tax commission.

Section 7311, Id., page 1872, specifies what this abstract shall contain.

Section 7460, Id., page 1908, provides that no abatement or refund of a tax shall be allowed by the commissioners save upon a hearing, with notice to the assessor; that if the abatement or refund claimed be allowed by the commissioners the same shall be certified to the tax commission, and finally granted only on the latter's approval.

Section 7458, Id., page 1908, provides that the county board of equalization shall hold two regular meetings in each year, the first commencing on the first Tuesday in September and the second on the third Tuesday in September, and each continuing for not more than ten consecutive days.

Section 7447, Id., page 1906, under which plaintiffs claim, reads: "Each county is responsible to the state for the full amount of tax levied for state purposes, excepting such amounts as are certified to be unavailable, double or erroneous assessments, as provided in this act, and in all cases where any person shall pay any tax, interest or cost, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to erroneous assessment, to improper or irregular levying of the tax, or clerical or other errors or irregularities, the board of county commissioners shall refund the same without abatement or discount to the taxpayer."

The trial court found generally for defendants, and specifically; that plaintiffs' total assessed valuations exceeded $7,500; that plaintiffs filed no schedule in which they fixed any value on their properties; that the assessor sent and published the notices required by said section 7291; that plaintiffs listed their property under the name "Arthur S. Miller Estate," when Arthur S. Miller was dead and his estate had long since been settled; that plaintiffs could have ascertained from "approval sheets" in the assessor's office, in time to file their protest, that an "appraisal and investigation" of their properties had

been made between March 27 and June 18, and learned therefrom the assessor's increased valuation; that plaintiffs filed no written protest until November 6; and that plaintiffs' only complaint was that their properties had been assessed too high. All of which findings are supported by the evidence.

The court concluded: That since said sections 7291 and 7447 were both portions of the same act, passed at the special session of the General Assembly of 1902, it could not have been the intent of the Legislature to provide two methods of procedure for the same wrong, growing out of the same facts; that since said section 7291 provides a remedy where it is claimed "property" has been assessed "too high," it was and is applicable here; that the words "without abatement or discount" in said section 7447 were intended to refer to so much of the erroneous tax as had been paid by the county to the state; that if plaintiffs could recover anything, that recovery would be limited to the tax on the excessive assessment; that the personal notice provided by said section 7291 is required only when a schedule had been returned fixing a valuation and the assessor had changed that valuation; that where there was no written protest the assessor was not obliged to make a written ruling stating his reasons; that no oral statements by the assessor, or promises made in letters written by him, could extend plaintiffs' statutory rights; that since the county board of equalization, under said section 7458, held its hearings in September, plaintiffs' written protest of November 6 was too late. All these conclusions we approve and most of them we think so clearly correct on reason as to require no support from adjudicated cases.

Plaintiffs' case rests entirely upon want of jurisdiction in the taxing authorities. If, as we conclude, they had jurisdiction, most of plaintiffs' argument and authorities are beside the point.

As to the court's findings concerning the facts disclosed by the "approved sheets" it should be ob-

served that neither said section 7317, nor any other statute, nor any decision of this court, so far as we are advised, defines the term ''assessment roll,'' or specifies its form.

In a case coming within the provision of said section 7292, where there was an increased valuation without notice and hearing, we held the taxpayer's relief confined to the tax based upon the valuation ''which the assessor added to the schedule.'' *Gale v. Statler,* 47 Colo. 72, 79, 105 Pac. 858.

Plaintiffs insist they were deprived of all relief under said section 7292, hence must have it under said section 7447. But they were so deprived, if at all, by their own neglect, and for that neglect they can claim nothing. They say there are but two prerequisites to a suit under the latter section, i. e., that the tax be paid and that it be erroneous or illegal. *First National Bank v. Patterson,* 65 Colo. 166, 175, 176 Pac. 498. But here the tax was neither erroneous nor illegal. If incorrect for any reason it was simply that it was excessive. In *Antero Co. v. Park County,* 65 Colo. 375, 177 Pac. 148, the tax in question was not excessive. It was levied against nontaxable property, hence was both erroneous and illegal. There is neither pleading nor proof in the instant suit that this tax is either. In case of excessive assessment we have pointed out that the taxpayer has an ample remedy, which, if his contentions be sustained, will result in a rebate of the excess. *Phillips v. Commissioners,* 83 Colo. 82, 84, 262 Pac. 523. Here plaintiffs have not pursued that remedy, but have elected to sue for the whole. In the last cited case, page 86, we further said: ''The taxpayer who asks relief against an alleged over-assessment may have it, only by affirmatively and clearly showing that it is manifestly excessive, fraudulent or oppressive.''

Most of what we have said herein applies particularly to the first cause of action. As to the second, it is sufficient to add that plaintiffs expressly repudiate any claim

to a refund of the excessive tax. They make no demand and ask no relief save a repayment of the entire amount, to which, as hereinbefore stated, they are not entitled.

Since our conclusion, on the whole record, is against plaintiffs, we find it unnecessary to consider cross-errors.

We think if plaintiffs' properties were assessed too high an ample remedy was provided by statute; that they have not pursued that remedy; that their property has not been illegally taken; and that due process of law has not been denied them.

The judgment is accordingly affirmed.