## No. 15,233.

BOARD OF COMMISSIONERS OF MORGAN COUNTY *v.*
DOHERTY, EXECUTRIX ET AL.
(168 P. [2d] 556)

Decided April 15, 1946.

Mr. C. E. ROBISON, Mr. G. C. TWOMBLY, for plaintiff in error.

Mr. PAUL W. LEE, Mr. GEORGE H. SHAW, Mr. DONALD C. McCREERY, Mr. WILLIAM A. BRYANS, III, for defendants in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

THIS is an action at law by the representatives of a taxpayer against the board of county commissioners of a county, to recover taxes he had paid on lands assessed to him on the mistaken and erroneous premise that he was the owner thereof. The action is based on a statute, the pertinent part of which reads: " * * * and in all cases where any person shall pay any tax, interest or cost, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to erroneous assessment, to improper or irregular levying of the tax, or clerical or other errors or irregularities, the board of county commissioners shall refund the same without abatement or discount to the taxpayer." '35 C.S.A., c. 142, §281. The taxpayer enjoyed a favorable finding and judgment below.

It appears that the lands involved always have belonged to the state; that in an attempted construction of an irrigation system, the company engaged therein became the owner in fee of a considerable tract of land, and enjoyed easements from the state of other lands (those here), "with provision for reversion to the state in case of abandonment," etc. There was abandonment of the project, and the company interested in the mat-

ter, proceeding pursuant to court order in the premises, and employing a quitclaim deed to that end, conveyed its "entire property," but describing none of it particularly, to Henry L. Doherty and Company, a copartnership, of which plaintiffs' decedent was the sole survivor. and owner. At the time of the conveyance, the "abandonment," as of course, had worked elimination of the use rights the irrigation company had enjoyed in relation to the state lands involved in this action. At no time, as should be emphasized, did Doherty and Company, or plaintiffs' decedent, own the lands involved in this action, or enjoy easement, use, or other right therein or thereto, and for none of the years for which plaintiffs' decedent paid taxes thereon (1925-1937), or ever, were said lands assessable for taxes at the instance of any authority for any purpose whatsoever. It appears, however, that the county assessor, giving attention to the property considered as the "system," as the irrigation project was known, and failing to note that plaintiffs' decedent did not have title to the state lands, nevertheless scheduled them as belonging to him, and plaintiffs' decedent's agent, examining the schedule submitted to him by the assessor, which included much land that did belong to his principal, likewise failing to note that certain of the lands included in the schedule so prepared by the assessor, were the said state lands, ok'd the schedule as submitted by the assessor. There was no evidence that either such assessor or said agent was cognizant of, or suspected, that the premise indulged by both of them through the years involved, was erroneous. Of a verity, neither could have had interest or purpose in accomplishing what resulted from their error. Giving attention to the fact situation, the trial court, amply justified, as we think, found "That the plaintiff and the county, by mutual mistake during all the years in question, assessed said lands and paid taxes without any negligence on the part of either the county or the taxpayer."

That the land on which the taxes sought to be recovered were levied and paid, was nontaxable is not gainsaid. In relation to property which *is* taxable, however, many situations have been presented and various conclusions, all tied to the fact that the property involved, in some manner or degree, were subject to taxation, have been stated in our reports. Many of those cases have been cited by counsel for plaintiff in error. We regard them as not applicable. We are dealing with a situation which presents no complications. The property here was not taxable. Through error and mistake, a tax was levied against it, and plaintiffs' decedent made payment thereof. Recovery of the sum resulting from the tax thus illegally levied, and mistakenly paid, is sought in an appropriate common-law action. We think of no situation to which the statute would more aptly apply.

Generally, as seems certain, in the absence of such a statute, payment of a tax is voluntary, and, although the tax may be erroneous or invalid, still the money paid cannot be recovered. The rule applied especially to taxes levied on real property, as here, for in relation thereto the process of collection is so gradual, and so many opportunities of resistance obtain, payment in manner here concluded the taxpayer. *Union Pac. R. Co. v. Board of Com'rs,* 222 Fed. 651. But, as the court there further observed, "The statute of Colorado here under consideration changes that law. It provides that, in all cases in which a person shall pay a tax which is for any reason erroneous or illegal, the board of county commissioners shall refund the same without abatement or discount. This is substantive law. It gives a new right. The statute has nothing to do directly with the law of procedure. The remedy for the enforcement of the right which it gives is not prescribed by the statute. That remedy is a suit at law. It is given by the common law. * * * This remedy, as Mr. Justice Van Devanter points out in *Singer Sewing Machine Co. v. Benedict,*

229 U.S. 481, 33 Sup. Ct. 942, 57 L. Ed. 1288, is available in the federal courts the same as in the state courts." The "new right" which the statute affords, and which may be enforced through a remedy "given by the common law," prompted the court in *South Broadway Nat. Bank v. City and County of Denver,* 51 F. (2d) 703, proceeding on the allegation that the assessment and levy were "illegal and invalid," to say that "indebitatus assumpsit" would lie, and approved the doctrine announced in *First National Bank v. Patterson,* 65 Colo. 166, 176 Pac. 498. The federal court denied recovery there, however, on the theory that since the controlling question had to do with *valuation* of the property which had been assessed, not the legality of the assessment as such, the taxpayer should have resorted to administrative agencies. In short, the property there *was* taxable, and the controversy did not involve the recovery of a tax paid pursuant to a levy illegally and erroneously made on property not taxable, as here.

█ In recognition of the necessity for prompt collection of taxes, and regardless of alleged error or illegality of levies, to require it in the first instance, the general assembly enacted the statute of the taxpayer's reliance here, the sum of which is that the taxpayer shall pay in any event, but if the tax is illegal or shall "thereafter be found to be erroneous or illegal," etc., "the board of county commissioners shall refund the same without abatement or discount to the taxpayer." *Bent County v. Santa Fe Co.,* 52 Colo. 609, 125 Pac. 528. The applicability and efficacy of the statute is emphasized in *Kendrick v. A. Y. & Minnie M. & M. Co.,* 63 Colo. 214, 164 Pac. 1161. In *Spaulding Mfg. Co. v. La Plata County,* 63 Colo. 438, 168 Pac. 34, we said: "Recovery is sought in this case under a specific and unqualified statute commanding a refund by the county of every erroneous or illegal tax paid, and does not involve the general law upon the subject. * * *. The statute provides that when 'any person shall pay' an illegal or erroneous tax, the

board shall refund." Since the taxpayer there had paid the illegal tax, we reversed the judgment below and required the county to refund. "If the tax was not legally laid, plaintiff in error [taxpayer] could, upon payment thereof, recover the same from the county under the provisions" of the statute. *First National Bank v. Patterson, supra.* In *Antero & Lost Park Reservoir Co. v. Board of Com'rs,* 65 Colo. 375, 177 Pac. 148, taxes had been levied and paid on property not taxable. We sustained an action brought under the statute, and required the county to "refund the tax." Again, as we have said, "It has been several times pointed out * * * that section 5750 R.S., 1908 ['35 C.S.A., c. 142, §281], affords an adequate remedy in case of an illegal or erroneous levy." *Denver & R. G. R. R. Co. v. Commissioners,* 69 Colo. 212, 193 Pac. 555. In a subsequent Antero Company case against Board of County Commissioners, 75 Colo. 131, 225 Pac. 269, we affirmed a judgment for refund of taxes paid on property not taxable. For discussion of the principles involved and review of the authorities, see, *Boyer Bros. v. Commissioners,* 87 Colo. 275, 288 Pac. 408. In *Miller et al. v. Commissioners,* 92 Colo. 425, 432, 21 P. (2d) 714, "increased valuations" of real estate was the basis on which the taxpayer claimed a refund pursuant to the statute here. Mr. Justice Burke, writing our opinion, said that the taxpayers had neglected to question such valuation directly, which, pursuant to another statute, was their burden, and added: "They say there are but two prerequisites to a suit under the latter section [the section here], i.e., that the tax be paid and that it be erroneous or illegal. *First National Bank v. Patterson,* 65 Colo. 166, 176 Pac. 498. But here," Justice Burke continued, "the tax was neither erroneous nor illegal. If incorrect for any reason it was simply that it was excessive. In *Antero Co. v. Park County,* 65 Colo. 375, 177 Pac. 148, the tax in question was not excessive. It was levied against nontaxable property, hence was both erroneous and illegal." In the foregoing opinion,

written in the light of our opinions in earlier presentations, the line of distinction obtaining between claims made because of erroneous or illegal assessments, for example, on property *not* taxable, and those made because of excessive valuations on property that *is* taxable, is illuminated. As to erroneous assessments, and, as already stated, the case under review not only has to do with property not belonging to the taxpayer to whom it was assessed, but was not assessable to any taxpayer on any hypothesis whatever, the unmistakable doctrine is that the statute invoked warranted the judgment given below, while as to excessive valuations, as Justice Burke emphasized, the taxpayer must seek relief pursuant to another statute.

The unmistakable doctrine which should control here, as we think, appears from our decisions, which we have undertaken to state. The county, however, basing its contention on '35 C.S.A., chapter 142, section 50 (amended, S.L. '43, p. 492), claims that since the taxpayer, through his agent, approved the tax schedule submitted by the county assessor, and which included the state lands, he may not claim under the statute here, a statute which, for immediate consideration, is restated, some words thereof being italicized, broadly provides that, "in *all* cases where *any* person, shall pay *any* tax, * * *, that shall *thereafter* be found to be *erroneous* or *illegal,* whether the same be owing to *erroneous assessment,* to *improper* or *irregular levying* of the tax, or *clerical* or *other* errors or *irregularities,* the *board of county commissioners shall refund the same without abatement or discount to the taxpayer.*" ('35 C.S.A., c. 142, §281.) The section of the county's reliance, provides that, every "inhabitant * * * shall set down * * * all real estate situate within the county by him owned or controlled on the first day of April, of the then current year, describing," etc. Certainly, that statute is reasonable, and should be observed. But it is a far cry, we think, and most unjust, to say that because a tax-

payer's agent, proceeding in the manner and under the circumstances here, mistakenly schedules real estate that not only does not belong to his principal, but is nonassessable state lands in which he has no interest, and, while continuing in error, pays the taxes levied thereon, does not come within the "new right" which the statute invoked by the taxpayer clearly declares. "Submission of property not taxable confers no authority on the taxing officers to assess or levy a tax thereon, and being without authority so to do, the taxpayer cannot be estopped by such listing from asserting such want of authority or the illegality of taxes levied and collected thereon." *Commercial Nat. Bank v. Board of Supervisors,* 168 Ia. 501, 150 N.W. 704. See, also, *Charlestown v. County Com'rs,* 109 Mass. 270; 3 Cooley on Taxation (4th ed.), p. 2557, §1280.

Since *Stephens v. Board,* 104 Colo. 556, 92 P. (2d) 732, is cited and emphasized by plaintiff in error, we pause to give it particular consideration. That case had to do with the valuation of a stock of merchandise, which, perforce, was assessable pursuant to a special statute ('35 C.S.A., c. 142, §54) (amended S.L. '43, p. 493), which does not require itemization or description of property in kind, but a valuation based on the merchant's average investment, etc. There, although the opinion does not make it wholly clear, the record shows that the merchant filed schedules for 1932 and 1933, in which he fixed the value of his stock, based whereon assessments and levies were made by the proper officers, and paid by the taxpayer. November 3, 1936, the merchant, claiming he had over valued his merchandise for the years mentioned—1932 and 1933, demanded refund, which was refused. February 17, 1937, four and five years subsequent to the respective events, he instituted action to recover, and invoked the statute involved here. That the merchant's merchandise was taxable was never in question, but only its value, and relief as to that, as already we have shown by our decisions, should

have been sought pursuant to another statute. In such situation, as of course, and as the trial court there had adjudged, we denied recovery. In no conceivable sense, as we are convinced, is the Stephens case comparable to the present inquiry.

It is urged that since, necessarily, the taxes collected have been distributed or allocated to the state, school district, municipality, as well as to the county, that that should prompt us to withhold relief. Such allocation always obtains. That, no doubt, was what prompted the General Assembly to employ the significant words with which the statute is concluded, that is to say, "the board of county commissioners shall refund the same without abatement or discount to the taxpayer." Besides, by simple bookkeeping entries, the county can charge the state and all other agencies for which it collects taxes, with whatever sums it has allotted and paid to them, which because of erroneous or illegal assessments it. has been required to refund. See, *Union Pac. R. R. Co. v. Board of Com'rs*, 217 Fed. 540, where it is said: "Again, we are told that the remedy given by the statute will lead to multiplicity of suits. The county treasurer is, under the statutes of Colorado, the collector of all taxes, state, county, school and municipal. In the accounting system, which the law provides, he is required to pay over the taxes to the state, city, school, and town authorities as the same are collected. It is therefore urged that, if the plaintiff should pay the taxes here complained of, they would be promptly distributed to the several public treasuries on whose behalf they were levied, and that plaintiff would be compelled to resort to a separate suit against each of these in order to recover the money paid. These difficulties are all of counsel's own creating. They do not exist in the statute. Its language is plain and comprehensive. It provides that: 'In all cases where any person shall pay any tax, interests or costs, or any portion thereof, that shall be found to be erroneous or illegal,

'* * * the board of county commissioners shall refund the same, without abatement or discount to the taxpayer.' As to state taxes, there is an express provision giving to the county credit in its accounting with the state for any taxes that have been refunded. We have no doubt that the same remedy would apply as to municipalities, and that the county treasurer could take credit in his settlements made from time to time with them for their proportion of any sum which the county was compelled to pay as a refund. Be this as it may, the language of the statute is plain. It has existed for more than 40 years. It has been repeatedly held by the highest court of the state to afford the taxpayer a plain, speedy, and adequate remedy. We cannot, from speculative reasoning as to difficulties of accounting, hold that the aggrieved taxpayer will not receive, in a single suit against the county, the full compensation which the law provides. All these dangers as to multiplicity of suits were present in the case of Singer Sewing Machine Co. v. Benedict, 229 U.S. 481, 33 Sup. Ct. 942, 57 L. Ed. 1288, and in Indiana Mfg. Co. v. Koehne, 188 U.S. 681, 23 Sup. Ct. 452, 47 L. Ed. 651; and still the remedy provided by the statute was held to be plain, adequate, and complete." "That the taxes were levied for state, school district and town, as well as for county, purposes is not material; for it is apparent from the Colorado statutes and decisions that the section covers broadly the whole of the tax that is found to have been erroneous or illegal, regardless of the purpose for which it was levied and placed on the county tax roll." *Union Pac. R. R. Co. v. Weld County,* 247 U.S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110. The foregoing doctrine was approved in *First National Bank v. Patterson, supra.*

We cannot think the six-year statute of limitations has application. Almost immediately on discovery of the erroneous and illegal levy, the taxpayer demanded refund, and on refusal thereof this action was promptly begun, all long before the expiration of six years, in

fact well within one year. Plaintiff in error cites *Antero Co. v. Commissioners,* 75 Colo. 131, 225 Pac. 269, but that case is distinguishable. From the beginning there, the taxpayer was apprised of the factual situation, contended at all times that the property was not taxable, yet, from year to year, although always protesting, it paid in accordance with the assessment. Our holding was that for the years for which the taxes had been paid, more than six years prior to filing the action, the statute applied, but for payment made within that period there should be recovery. Here, as already stated, both the taxpayer and the county authorities proceeded in error as to the facts until shortly before the taxpayer started action. The dissimilarity is obvious.

Let the judgment be affirmed.

MR. JUSTICE BURKE and MR. JUSTICE STONE dissent.

MR. JUSTICE STONE dissenting.

In Colorado the owner or person having charge of property subject to taxation is required by statute to make return of a schedule in which shall be set down all real estate situate within the county by him owned or controlled with proper description thereof. In January 1918, Henry L. Doherty and Company acquired a large acreage of land in Morgan county by deed of conveyance which did not describe the land by legal subdivision but as a certain "system of irrigation works together with all reservoir sites and all rights of way for canals, ditches and laterals." Beginning in 1925 Doherty's agent in Colorado returned to the county assessor of Morgan county schedules describing this property for taxation. Notwithstanding the fact that he had been in charge of the acquiring of this property, he included in the property returned for taxation certain state lands upon which easement only had been obtained for reservoir sites and rights of way and which were not in fact owned by Doherty. These easement

lands continued to be returned by Doherty for taxation for the succeeding years and taxes thereon were voluntarily paid by him for thirteen years, whereafter Doherty made demand for repayment of the taxes so paid on the parcels of state land and brought this action to recover.

The defendant county pleaded the six-year statute of limitations as to the first eight years' taxes. Such claims are universally deemed contractual. *Miller v. Schloss,* 218 N.Y. 400, 113 N.E. 337; *Byram v. Thurston County,* 141 Wash. 28, 251 Pac. 103. Accordingly, unless by statute otherwise provided, the general statute of limitations applicable to contracts is held to apply in actions brought under statutes providing for recovery of taxes erroneously paid. *Neilson v. San Pete County,* 40 Utah 560, 123 Pac. 334; *Lonsdale v. Carroll County,* 105 Ia. 452, 75 N.W. 332. In the latter case it was so held notwithstanding a statute of limitations providing that in actions for relief on the ground of fraud or *mistake* the cause of action would not be deemed to have accrued until the mistake should have been discovered by the party aggrieved. We have no such statute in Colorado. This court in harmony with the general rule held in *Antero Co. v. Commissioners,* 75 Colo. 131, 225 Pac. 269, in an action brought to recover taxes paid on nontaxable property, that the six-year statute of limitations applied. In a contract action the statute of limitations runs from the time the cause of action accrues, unless there has been fraud or concealment preventing knowledge thereof, and no such fraud or concealment is here suggested. Mere ignorance of the facts does not postpone the statute. In discussing actions to recover taxes paid, 3 Cooley, Taxation (4th ed.), §1304, the rule is stated: "As the cause of action accrues at the time of the payment, the statute of limitations begins to run from that time, even though the illegality may not then have been known." "When a party pays an unlawful tax under protest, a cause of action * * * at once accrues in favor of such party to recover such tax, and the stat-

ute of limitations begins to run from the date of such payment." *Centennial Eureka Min. Co. v. Juab County,* 22 Utah 395, 62 Pac. 1024. The majority opinion in this case establishes the rule that in an action contractual in nature the statute of limitations does not begin to run until discovery of the contract right. This doctrine is not only novel; under it taxes, at least, will never be at rest, and I fear that in the future it may return to plague us.

But is plaintiff entitled to recover regardless of the statute of limitations? The right to recover an illegal tax existed at common law. The need of legislation arose from the fact that as a prerequisite to recovery at common law it must be shown not only that the assessment was absolutely void, but, unjustly, it was believed, that the money sued for had been received by the corporation for its own use and that the payment had been made upon compulsion. *Richardson v. Denver,* 17 Colo. 398, 30 Pac. 333; 3 Cooley, Taxation (4th ed.), p. 2554. Our statute eliminated both of these requirements. As to the former, see *Union Pacific R. Co. v. Board of Commissioners,* 217 Fed. 540, quoted in the majority opinion, and as to the latter, *Union Pacific R. Co. v. Commissioners,* 222 Fed. 651, where the court said, speaking through Lewis, J.: "In the absence of a statute, the payment of a tax, with few exceptions, is held to be voluntary, and, though the tax may be invalid, the money paid cannot be recovered. This is especially true of taxes upon real property. * * * The statute of Colorado here under consideration changes that law." A third evil was the frequency of interference by injunction suits with the process of collecting taxes and of this we have said that, "appreciating the necessity of prompt payment of the public revenue as an essential prerequisite to efficient government," the general assembly enacted this law, which in most cases furnishes an adequate remedy and prevents necessity of equitable actions. *Bent County v. Santa Fe Co.,* 52

Colo. 609, 125 Pac. 528. So far as I find from judicial interpretation, those were the evils sought to be remedied by the statute, and the statute does remedy those evils and give rise to a claim against the county in all cases where any person shall have paid an illegal tax.

However, the objection raised here goes not to the extent of the right, but to the conduct of the party seeking to enforce it. Both statutory and contract rights may be lost by the statute of limitations or by laches or by estoppel. Under the common law, even where all the prerequisites for recovery were shown, it was held that there could be no recovery of taxes where payment had been made under mistake of the taxpayer *due to his own neglect.* "Payment under a mistake of fact is generally held to be recoverable, at least where a mistake on the part of the tax officers, but not *where the mistake is that of the taxpayer and due to his own neglect.* Mistake or ignorance of fact is not ground where the public records show the facts, since public policy requires that taxpayers be presumed to know facts appearing of record. Mistake of fact is sometimes defined by statute as one not caused by the neglect of a legal duty." 3 Cooley, Taxation (4th ed.), p. 2582, §1295.

It is true in this case that, when the assessor discovered that Doherty had long failed to return a large acreage of property for taxation, the assessor sent to Doherty's resident agent proper assessment schedules as required by law and that on these schedules he noted property descriptions of land which appeared to be included within the irrigation project which had been deeded to Doherty. This action on the part of the assessor was merely a voluntary courtesy on his part for the assistance of the taxpayer; it was no part of his legal duty; his action in doing it was in no wise an official action, and it in no wise relieved the taxpayer from his legal duty correctly to describe his property as required by statute. The facts as to what lands were actually

owned by plaintiff were matters of public record or matters within his reach and of which he should have been advised. Plaintiff's resident agent had himself attended to the purchase of these lands in behalf of the district. It was not the duty of the assessor to search the title records in behalf of the owners. The assessor's duty is only in behalf of the public to ascertain that property does not escape just taxation. Plainly then, both the error as to ownership and the error in scheduled descriptions were solely the result of negligence of legal duty on the part of plaintiff. The finding of the trial court to the contrary has no evidence to support it, and the payment of taxes was made under a mistake of fact *where the mistake was that of the taxpayer and due to his own neglect.* It is more than that. We may even determine that the defense, that payment was due to the negligence of the taxpayer, has been eliminated by the statute, and still we have not disposed of the issue. The defense here raised is not only that the payment was negligent, but that the very laying and imposition of the tax was by the act of the taxpayer. He listed the property on the records as his own; he caused it to be assessed, and now, long after it has been paid and the proceeds distributed to the state, school district and county funds, he asks that a levy be made against other property, much of it to be paid by new owners, to repay the tax long since spent, which he imposed on himself.

As was said in *People v. Illinois Central R. Co.*, 273 Ill. 220, 112 N.E. 700: "The public has an interest in the collection of taxes from every property owner. The rule that the property owner cannot question the correctness of his schedule is not grounded upon the doctrine of estoppel as that doctrine is ordinarily applied. The decisions in the cases cited do not rest upon the usual principles of estoppel nor contain the elements usually required in courts of equity in the application of that doctrine. They seem to rest rather upon the

principle that it is the duty of the taxpayer to see that the list of property is furnished to the proper officers, and that it is against public policy to permit him to make such schedule and then question its accuracy, whether the failure to certify the proper list of property was intentional or unintentional * * *."

There is no indication in the statute of any intent on the part of the legislature to do away with this defense of negligence in the very laying of the tax any more than of intent to do away with the defense of the statute of limitations. Under a similar statute in Iowa, providing for refund to the taxpayer of any tax or portion thereof "found to have been erroneously or illegally exacted or paid," the court denied plaintiff relief where the property, although not assessable in that county, had been listed for assessment by the taxpayer's agent, and said: "It is the almost universal voice of authority that where one voluntarily submits his property to the jurisdiction of the assessing officer, asking that it be assessed by him, he is thereafter estopped, especially when action has been taken by the county or any of the assessment districts on the strength thereof, from denying that the property was assessable, or from saying that the authorities had no jurisdiction thereof." *Slimmer v. Chicasaw County*, 140 Ia. 448 (1908), 118 N.W. 779.

However, we are not required to look to other jurisdictions for assistance on this question; we have already determined it. In the case of *Boyer Bros. v. Commissioners*, 87 Colo. 275, 288 Pac. 408, wherein action was brought to recover taxes paid, we said: "Having been, in part at least, responsible for the assessment in the manner described, and having failed to file a schedule required by law, the plaintiff is in no position to urge, as a ground for recovering the taxes paid by it, the method of assessment followed in this case." And still more explicitly, in *Stephens & Co. v. Commissioners*, 104 Colo. 556, 92 P. (2d) 732, where action was brought to recover taxes paid, we said: "From paragraph 4 of

the complaint, hereinbefore set out, it appears that plaintiff in error voluntarily paid the taxes in question; that the error involved was due solely to calculations contained in plaintiff in error's own tax schedule; that the schedule was voluntarily made by it; that the error was due solely to plaintiff in error's own negligence and not to any action of the taxing agencies; that the facts which show the mistake were in the sole possession of the taxpayer. Under these circumstances plaintiff in error is barred from any recovery." And in that case we further said: "It was the duty of plaintiff in error to file a correct schedule and to know what elements of value and property were listed in that schedule prepared by it. Its failure in that regard was the neglect of a legal duty resting solely upon it. To permit recovery under the facts and circumstances in the instant case would endanger the entire tax structure of the state and lead to a multiplicity of suits for refund of taxes. In reaching the conclusion announced we believe our holding to be in harmony with the great weight of authority."

The majority opinion in this case overrules our own pronouncement in the Stephens case and departs from the salutary rule established by the great weight of authority. Accordingly I must dissent.

Mr. Justice Burke concurs in this dissent.