388 P.2d 418

RAY SCHOOL DISTRICT NO. 3 OF PINAL COUNTY, Arizona, and Ray High School District No. 83 of Pinal County, Arizona, Appellants,

v.

PINAL COUNTY, Arizona, Appellee.

No. 7810.

Supreme Court of Arizona.

En Banc.

Jan. 22, 1964.

Fennemore, Craig, Allen & McClennen, Phoenix, for appellants.

E. D. McBryde, Pinal County Atty., Florence, for appellee.

LOCKWOOD, Vice Chief Justice:

Kennecott Copper Company recovered a judgment against Pinal County for a reduction in assessed valuation of its property, and for repayment of the excess taxes it had paid in the amount of $273,685. Of this amount, the judgment determined that the county had paid to Ray School District No. 3, an amount of $58,420 and to Ray High School District No. 83 an amount of $48,895 in excess of the amounts to which each was entitled under the reduced assessed valuation of the Copper Company property.

Pinal County secured from the State Tax Commission permission to exceed its budget to pay the judgment to the Copper Company, and then demanded reimbursement from the two school districts in the amounts stated above. The school districts filed a complaint against Pinal County for judgment declaring they were not required to reimburse the county. The county counterclaimed for the amounts for which it claimed reimbursement. The matter was tried upon an agreed statement of facts, substantially as above described. Declaratory judgment was rendered against the claim of the school districts, and for the county on its counterclaim, for reimbursement from School District No. 3 in the amount of $58,420, and from High School District 83 in the amount of $48,895. From this judgment the school districts have appealed.

The sole question then is whether the county may recover from the school districts the excess amounts paid to them under what was determined to be an invalid assessment. Appellants maintain that the county has no right to do so in the absence of statutory authorization. They cite two statutes as being in pari materia, and urge that they show that the legislative intent was that the county should not recover a refund from school districts.

Appellants refer to A.R.S. §§ 42–353 and 11–505. Section 42–353 provides:

> "When a tax has been set aside as invalid, * * * the proportion thereof which has been paid to the *state treasurer* shall be refunded to the county. On the next settlement thereafter, the county treasurer of the county shall be credited therewith by the state treasurer." (Emphasis supplied.)

No provisions are made in this section for a refund other than from the state, where a tax has been set aside as invalid. Section 11–505, referring to duplicate payments of taxes does provide for a refund from the state, or "any of the political subdivisions", reads as follows:

> "A. The Board of supervisors may authorize the county treasurer to refund to any taxpayer or his agent, any duplicate payments of real or personal property taxes which may have been made, provided a claim for such refund is made by the taxpayer or his agent within one year from the date of such duplicate payment or payments.
>
> "B. The treasurer shall be entitled to credit for such refunds in the next accounting after such repayment *with each of the political subdivisions and the state* to which such duplicate payment may have been transmitted in the event he had previously transmitted such duplicate payment or payments to any of the political subdivisions of the state or to the state." (Emphasis supplied.)

Appellants' argument is: The legislature specifically provided for a refund or credit to the county from both the state and any political subdivision to which payments have been transmitted, in the case of *duplicate payments* of a tax; the legislature directed a refund from the state only to the county when a tax has been set aside as invalid, or refunded to a taxpayer as a double or erroneous *assessment*. Ergo, by omitting reference to repayment by a political subdivision to the county in the latter case, it is evident the legislative intent was deliberate denial of a right to refund from any such political subdivision.

Although we have not passed directly on the precise point, we indicated in Maricopa County v. Arizona Citrus Land Co., 55 Ariz. 234, 100 P.2d 587 (1940) that the statute in question (which was then § 3132, R.C.1928) meant to apply to a situation where the taxing unit which had received part of an il-

legal tax *should reimburse the one which had repaid it in full.* The Supreme Court of Colorado encountered a similar situation in Board of County Com'rs. of Morgan County v. Doherty, 114 Colo. 594, 168 P.2d 556, 165 A.L.R. 868 (1946). In Colorado the County Board of Commissioners by statute was directed to make a refund of taxes under assessments held to be illegal. In answer to the contention that the taxpayer should be denied relief because the taxes had already been distributed to the state, school district and municipality, the Supreme Court of Colorado pointed out that there was statutory provision giving the county credit in its accounting with the state, and that:

"by simple bookkeeping entries, the county can charge the state and all other agencies for which it collects taxes, with whatever sums it has allotted and paid to them, which because of erroneous or illegal assessments it has been required to refund."

See also Union Pac. R. Co. v. Board of Com'rs., 217 F. 540 (8th Cir. 1914). The same principle, i. e., that although the county collected the taxes, it derived a benefit from only part of the money, and therefore the other taxing units should reimburse it for that portion of the illegally collected money which it passed on to them, is also applied in Iowa and Washington.

See Schoenwetter v. Oxley, 213 Iowa 528, 239 N.W. 118 (1931); Byram v. Thurston County, 141 Wash. 28, 251 P. 103, 252 P. 943 (1926); Steele v. Madison County, 198 Iowa 902, 200 N.W. 330 (1924). The Supreme Court of Washington said in Byram:

"It is of no moment that the amount was merely received and proportioned as provided by statute. For that portion illegally disbursed to the state, the law provides for appropriation to reimburse the county; and recovery from the other taxing districts may be had by credits upon funds hereafter coming into its possession."

To hold that the county could recover money held illegally disbursed to and received by the state, but that it could not recover money similarly disbursed to and received by the school districts, would be to sanction the doctrine of unjust enrichment. In either case, the money paid out by the county was in excess of that to which either the state or the school districts were entitled. In the case of the state, the legislature specifically recognized its duty to refund its excess portion, in accordance with the equitable principle preventing unjust enrichment. We cannot believe mere silence on the part of the legislature with regard to restitution from school districts was intended to negative application of this equitable principle to them.[1]

1. Cf. State v. Martin, 59 Ariz. 438, 130 P.2d 48 (1942), wherein this court held that, in the absence of positive statutory or constitutional prohibition, the state

**208**

We find no conflict, direct or implied, in the provisions of § 42–353, carried forward in the 1956 enactment of the Arizona Code from a much earlier statute, and the provisions of § 11–505, enacted in 1959.

Judgment affirmed.

UDALL, C. J., and STRUCKMEYER, BERNSTEIN and JENNINGS, JJ., concur.

must refund to individual citizens taxes which they had paid on property which was later determined subject to a superior mortgage lien of the state, stating

"[T]he general principles of equity should be applied to actions brought by the state as well as by a private party."